551 A.2d 1080

COMMONWEALTH of Pennsylvania

v.

**Robert HEWETT, Appellant.**

Superior Court of Pennsylvania.

Submitted June 20, 1988.

Filed Dec. 2, 1988.

Petition for Allowance of Appeal Denied May 2, 1989.

Nino V. Tinari, Philadelphia, for appellant.

Donna G. Zucker, Assistant District Attorney, Philadelphia, for Com.

Before MONTEMURO, KELLY and POPOVICH, JJ.

KELLY, Judge:

In this appeal, we are called upon to consider whether appellant, Robert Hewett, was denied his right to a fair and impartial trial based solely upon the fact that the trial judge, who presided over his jury trial, was the subject of a Judicial Inquiry and Review Board (JIRB) investigation. After careful review of the record and the applicable authority, we conclude that absent a showing of specific instances of partiality, bias or prejudice, we will not reverse an otherwise valid verdict based solely on the assertion that the trial judge was, at the time of trial, the subject of an investigation by the JIRB. Accordingly, we affirm.

The relevant factual and procedural history of this case is as follows. On October 23, 1986, a federal grand jury returned a multi-count indictment charging nineteen individuals associated with the Roofers Union Local 30–30B with violation of our federal laws. The JIRB requested and obtained information developed in connection with the federal investigation. Shortly thereafter, letters of inquiry pursuant to JIRB Rule 1(b)[1] were issued to several members of the Philadelphia judiciary, including the trial judge in this case, William J. Porter. In the letter the JIRB stated that it had reason to believe that he had received cash from the Union in 1985. Formal charges, however, were not issued until January 15, 1987. On January 30, 1987, Judge Porter was suspended with pay by our Supreme Court pending the ultimate resolution of the matter.[2]

1. Rules of Procedure Governing the Judicial Inquiry and Review 1(b) provides:

(b) If, after preliminary investigation, it is felt the complaint warrants further investigation, the judge shall be notified of the investigation, the nature of the charge, and the name of the person making the verified statement, if any, or that the investigation is on the Board's own motion, and shall be afforded reasonable opportunity in the course of the investigation to answer and to present such matters as he may choose. Such notice shall be given by prepaid registered or certified mail addressed to the judge at his chambers, or if not delivered, then at his last known residence. Any answer filed with the Board shall be signed by the judge.

2. In *Matter of Cunningham,* 517 Pa. 417, 538 A.2d 473 (1988), our Supreme Court, per Chief Justice Nix, agreed with the finding of the

On December 17, 1986, appellant was found guilty by a jury of two counts of corruption of minors. Timely post-verdict motions were filed on December 23, 1986. Following the suspension of Judge Porter by our Supreme Court, the matter was reassigned to the Honorable George J. Ivins for the disposition of post-verdict motions and sentencing. On November 27, 1987, appellant filed a supplemental post-verdict motion in which he asserted that he was denied a fair and impartial trial because, at the time of trial, Judge Porter was the subject of an investigation by the JIRB. On January 15, 1988, Judge Ivins denied appellant's post-verdict motions. Thereafter, on February 16, 1988, appellant was sentenced to three years probation and ordered to pay $700.00 restitution by September 1, 1988. Appellant was further ordered to avoid employment opportunities, during his term of probation, that would place him in contact with persons under the age of eighteen. This timely appeal followed.

On appeal, appellant contends that he is entitled to a new trial because the trial judge who presided at his trial failed to disclose the fact that he (the judge) was the subject of an investigation conducted by the JIRB at the time of appellant's trial. Appellant argues that had he been aware of the investigation, he would have sought and would have been entitled to the judge's recusal. As a result, appellant argues, he was denied a fair and impartial trial. We find no merit to this claim.

■ The trial court opinion by Judge Ivins notes that although appellant set forth the above contention in supplemental post-verdict motions, the record contains no indication that appellant obtained permission to file these supplemental motions as required by the Pennsylvania Rules of Criminal Procedure.[3] Judge Ivins deemed the issue waived,

JIRB that Judge William J. Porter, the trial judge in the instant case, had received $300.00 cash from the Roofers Union and held that "the conduct indulged in by respondent warrants the sanction of suspension and forfeiture of office." 517 Pa. at 444, 538 A.2d at 487.

3. Rule 1123. Post–Verdict Motions

quoting *Commonwealth v. Sheaff*, 365 Pa.Super. 613, 530 A.2d 480 (1987), but nevertheless, chose to entertain appellant's claim, finding it to be meritless.

In *Commonwealth v. Sheaff, supra,* this Court found that although appellant filed written supplemental post-verdict motions reasserting a sufficiency of the evidence claim with the required specificity, the record did not show that appellant ever sought the necessary permission of the trial court to file supplemental post-verdict motions *nunc pro tunc,* and thus the issue was not preserved for review. However, in *Commonwealth v. Sheaff,* 518 Pa. 655, 544 A.2d 1342 (Table) (1988), the Supreme Court reversed this Court's holding, stating in a *per curiam* order that the "Superior Court erred in treating the issue of the sufficiency of the evidence as waived." *Commonwealth v. Sheaff,* (slip opinion at 1). It may be inferred from this holding that it was improper for this Court to deem an issue waived for an alleged failure to preserve the issue for review, when the trial court elected to address the issue on its merits. In the instant case, despite the trial court's finding that appellant's claim had been waived by his failure to comply with Pa.R. Crim.P. 1123, the court entertained appellant's contention. In accordance with the apparent ruling of our Supreme Court in *Commonwealth v. Sheaff, supra,* we do not find the claim to have been waived for failure to secure formal allowance of supplemental post-verdict motions *nunc pro tunc.*

> (a) Within ten (10) days after a finding of guilt, the defendant shall have the right to file written motions for a new trial and in arrest of judgment. *Only those grounds may be considered which were raised in pre-trial proceedings or at trial, unless the trial judge, upon cause shown, allows otherwise.* Argument, a hearing, or both shall be scheduled and heard promptly after such motions are filed, and only those issues raised and the grounds relied upon in the motions that are stated specifically and with particularity may be argued or heard. If the grounds asserted do not require a transcript, neither the filing, argument, nor hearing of post-verdict motions shall be delayed for lack of a transcript of the notes of testimony.
>
> 42 Pa.C.S.A. 1123(a) (Emphasis added).

■■■ As a general rule, when circumstances arise during the course of trial raising questions of the trial judge's bias or impartiality, it is the duty of the party, who asserts that a judge should be disqualified, to allege by petition the bias, prejudice, or unfairness necessitating recusal. *Reilly by Reilly v. Southeastern Pennsylvania Transportation*, 507 Pa. 204, 489 A.2d 1291 (1985); *Commonwealth v. Darush*, 501 Pa. 15, 459 A.2d 727 (1983); *Commonwealth v. Perry*, 468 Pa. 515, 364 A.2d 312 (1976); *Commonwealth v. Reddix*, 355 Pa.Super. 514, 513 A.2d 1041 (1986); *Commonwealth v. Sawyer*, 355 Pa.Super. 115, 512 A.2d 1238 (1986). Furthermore, a judge's decision to continue presiding over a jury trial will not be reversed in the absence of a clear abuse of discretion. *Reilly v. SEPTA, supra; Commonwealth v. Reddix, supra.* In order to establish an abuse of discretion, the appellant must show something more than bias in the abstract; he must ordinarily demonstrate that the alleged bias of the judge infected the jury or otherwise deprived him of a fair trial. *See Commonwealth v. Darush, supra; Commonwealth v. Bonaparte*, 366 Pa.Super. 182, 530 A.2d 1351 (1987); *Nemeth v. Nemeth*, 306 Pa.Super. 47, 451 A.2d 1384 (1982).

In the case *sub judice*, however, appellant's recusal motion was raised for the first time following trial. As a result, different considerations come into play.

■■■ In *Reilly v. SEPTA, supra*, our Supreme Court considered the question of the appropriate standard of review when, as in this case, the motion for recusal was filed after the verdict had been entered. The Court in *Reilly* discussed the ramifications of such motions upon our judicial system stating:

Questions concerning the fairness, impartiality, or bias of the trial court always affect the administration of justice and can cloak the whole system of judicature with suspicion and distrust. Because recusal requests call into question our ability to mediate fairly, they raise important issues in which the public is concerned. If our courts are perceived to be unfair and biased, our future

ability to adjudicate the public's grievances and wrongs will be threatened, because we all lose the one thing that bring litigants into our halls of justice—their trust. Without the people's trust that our decisions are made without malice, ill-will, bias, personal interest or motive for or against those submitting to our jurisdiction, our whole system of judicature will crumble. Accordingly, when challenges are made concerning the necessity for the recusal of a judge, an important public question is being addressed which we, as responsible representatives of the people, must resolve. However, where the challenge is made for the first time after verdict, in post-trial motions or in arguments and briefs before the appellate courts, different considerations come into play.

Charges of prejudice or unfairness made after trial expose the trial bench to ridicule and litigants to the uncertain collateral attack of adjudications upon which they have placed their reliance. One of the strengths of our system of justice is that once decisions are made by our tribunals, they are left undisturbed. Litigants are given their opportunity to present their cause and once that opportunity has passed, we are loathe to reopen the controversy for another airing, save for the greatest of need. This must be so for the security of the bench and the successful administration of justice. Accordingly, rules have developed for the overturning of verdicts and judgments for after-acquired evidence.

507 Pa. at 224–225, 489 A.2d at 1301. Therefore, the Court held:

In our view, recusal motions raised after verdict should be treated no differently than other after-acquired evidence situations which compel the proponent to show that: 1) the evidence could not have been brought to the attention of the trial court in the exercise of due diligence, and 2) the existence of the evidence would have compelled a different result in the case.

507 Pa. at 225, 489 A.2d at 1301. A party is not entitled to question a judge's impartiality after the case had ended

without substantiation in the record that the complaining party did not receive a full, fair and impartial trial. *Reilly v. SEPTA, supra.* While it is evident that despite due diligence, appellant could not have discovered the fact that the trial judge was being investigated by the JIRB,[4] we cannot conclude that the existence of the evidence would have compelled a different result.

Our research discloses no cases in Pennsylvania which address the issue of whether a defendant was denied a fair trial where, at the time of trial, the presiding judge was the subject of an investigation by the JIRB. Our research has, however, disclosed a recent decision by this Court addressing a claim of ineffective assistance of trial counsel based solely upon the assertion that counsel was disbarred following his representation of the defendant. *Commonwealth v. Vance,* 376 Pa.Super. 493, 546 A.2d 632 (1988). In *Vance,* the defendant was arrested and charged with murder and possession of an instrument of crime. He confessed to the crime and his statement established that he shot the victim, apparently in a dispute over rent payments. The defendant also admitted that he disposed of the body following the shooting.

The defendant was represented by Richard Polack from April, 1985 until he was sentenced on February 5, 1986. During the course of his representation, counsel actively and vigorously sought to protect his client's interests. The defendant eventually pled guilty to murder. Following a

4. Pursuant to 42 Pa.C.S.A. § 3334, "all papers filed with and proceedings before the [JIRB] shall be confidential but upon being filed by the board in the Supreme Court, the record shall lose its confidential character." In this case, the jury returned its guilty verdict in December 1986. Knowledge of the JIRB investigation remained privileged until at least January 15, 1987 when the recommendation of the JIRB was forwarded to the Supreme Court. Therefore, appellant was not entitled to know of the investigation. *See* Rules of Procedure Governing the Judicial Inquiry and Review Board 1(c); 6(c); 19; 24(i); *In re Subpoena Served by Pennsylvania Crime Commission on Judicial Inquiry and Review Board, dated June 7, 1983, No. 83194,* 512 Pa. 496, 517 A.2d 949 (1986); *cf. Attorney T. v. Office of Disciplinary Counsel of Pennsylvania,* 519 Pa. 280, 547 A.2d 350 (1988).

degree of guilt hearing, the defendant was found guilty of murder in the first degree.

On February 10, 1986, the defendant filed *pro se* motions to withdraw his guilty plea and for modification and reconsideration of sentence. An evidentiary hearing was held on June 24, 1986. Sometime thereafter, the trial court was informed by the Disciplinary Board of the Supreme Court of Pennsylvania that trial counsel's admission to the Pennsylvania Bar had been revoked on April 16, 1986. The defendant's motion to withdraw his guilty plea was granted on the basis that: (1) since counsel's admission to the Bar was revoked, the defendant was not represented by a duly licensed member of the Bar; and (2) trial counsel was abusing cocaine during the course of his representation. The thrust of the trial court's opinion was not that the defendant's guilty plea was unknowing or involuntary, but went rather to the conduct of the defendant's counsel unrelated to the substantive efficacy of the proceedings before the court.

The question raised by the Commonwealth on appeal was whether the revocation by our Supreme Court of defense counsel's admission to the Bar of Pennsylvania, after the defendant's criminal trial had been completed, rendered counsel ineffective. *Commonwealth v. Vance, supra,* 376 Pa.Superior Ct. at 496, 546 A.2d at 633–34. This Court held that the fact that trial counsel's admission to the bar was subsequently revoked for activities not related to his conduct at trial did not mean that he was unrepresented by counsel at trial. *Cf. United States v. Mouzin,* 785 F.2d 682 (9th Cir.1986); *United States v. Hoffman,* 733 F.2d 596 (9th Cir.1984); *People v. Lieberman,* 149 Ill.App.3d 1052, 103 Ill.Dec. 480, 501 N.E.2d 797 (1986); *People v. Williams,* 138 Ill.App.3d 1041, 93 Ill.Dec. 569, 487 N.E.2d 13 (1985). Furthermore, counsel's subsequent disbarment would not *per se* render him ineffective absent a finding that the conduct which caused the disbarment effected counsel's representation of the defendant and that the defendant was prejudiced by counsel's ineffectiveness. The defendant was still re-

quired to establish counsel's ineffectiveness judged by the normally applicable standards set forth in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967).[5]

■  Admittedly, the cases are factually dissimilar, but we find the underlying principles to be sufficiently analogous to warrant application of the reasoning in *Vance* to the instant case.  Thus, in order for appellant to prevail, he must establish there was a nexus between the activities being investigated by the JIRB and the trial judge's conduct at trial.  *Cf. Johnson v. Johnson*, 424 P.2d 414 (Okl.1967) (the petitioner had the burden of convincing a constitutional majority of the Oklahoma Supreme Court that the judgment under review clearly was entered under circumstances of judicial wrongdoing, *i.e.* the former justice accepted a bribe in return for his vote).  Moreover, even where appellant demonstrates the above requirement, he must still allege and establish that bias, prejudice or partiality infected the jury or otherwise deprived him of a fair trial.  For the reasons which follow, we conclude that appellant has not met his burden of proof.

First, at the time of appellant's trial, the trial judge retained the position of a duly commissioned judge of the Court of Common Pleas of Philadelphia County with all the rights and privileges which attach to that position.  Furthermore, our review of the applicable statutes reveals no requirement that a judge disqualify himself from presiding over a trial because he was the subject of investigation by the JIRB; which is wholly unrelated to the pending matter. *But see* 42 Pa.C.S.A. § 3307 (no judge or district justice against whom impeachment proceedings are pending in the

---

**5.**  In order to establish a claim of ineffectiveness, appellant must show that: (1) by act or omission counsel was arguably ineffective; (2) counsel's act or omission could not have had an objectively reasonable basis designed to effectuate appellant's interest; and (3) appellant was prejudiced by the act or omission in that but for the arguably ineffective act or omission there is a reasonable probability that the result would have been different.  *Commonwealth ex rel. Washington v. Maroney, supra; Commonwealth v. Petras*, 368 Pa.Super. 372, 534 A.2d 483 (1987).

Senate shall exercise any of the duties of his office until he shall have been acquitted). Furthermore, where it is deemed necessary, the Rules of Procedure governing the JIRB, specifically Rule 24, provide the JIRB with the option of requesting an immediate suspension of a judge pending its completion of the investigation. The trial judge, however, was not suspended until January 30, 1987. Thus, until January 30, 1987, he retained the authority to preside over defendant's trial.

Second, the investigation involved activities totally unrelated to the trial judge's conduct at appellant's trial. Appellant was tried and convicted in December of 1986 for matters wholly unrelated to any alleged wrongdoing being investigated by the Federal Grand Jury. Thus, there was no nexus between the focus of the JIRB investigation and presiding judge's conduct at trial. Therefore, the fact that he was being investigated for improper conduct does not constitute a *per se* basis for disqualification. *Cf. Johnson v. Johnson, supra.* As such, appellant had the burden of alleging and demonstrating that the trial judge was biased, prejudiced or partial and that the trial judge's alleged bias, prejudice or partiality infected the jury or otherwise deprived him of a fair trial.

Rather than set forth specific allegations of bias, partiality, or prejudice, appellant relies implicitly on the proposition that an investigation into alleged wrongdoing by the trial judge, in and of itself, implies a lack of impartiality that would lead him to favor the Commonwealth, and thus show bias towards all defendants. We cannot agree.

First, we do not find tenable the proposition that the investigation by itself demonstrates a motive to favor the Commonwealth. Second, the verdict was rendered by a jury and not by the trial judge; accordingly, the jury and not the trial judge exercised full responsibility for the fact finder function. Thus, the integrity of the fact-finding process was insulated from any potential bias of the judge. Finally and most significantly, no ruling of the trial judge and no specific event or incident which occurred during the

trial gave rise to any question as to the trial judge's objectivity or to the propriety of his rulings.[6] Therefore, there can be no possible suggestion that appellant received anything less than a full, fair and impartial trial. *See Reilly v. SEPTA, supra; Commonwealth v. Satzberg,* 358 Pa.Super. 39, 516 A.2d 758 (1986).

We find no causal nexus between the subject of the investigation and the judge's conduct at trial. Without a showing of specific instances of partiality, bias or prejudice, we will not reverse an otherwise valid verdict based solely on the fact that the trial judge was the subject of an investigation by the JIRB, which later led to that judge's suspension and forfeiture of office for misconduct unrelated to that trial. Accordingly, we affirm the judgment of sentence.

---

**6.** We note that careful review of the record reveals that not one of the trial judge's rulings of law were challenged by appellant at trial or in his post-verdict motions.