556 A.2d 1370

In the Interest of Anthony McFALL.

Appeal of COMMONWEALTH of
Pennsylvania. (Nine Cases)

In the Interest of Robert WISE.

In the Interest of Anthony WHETSTONE.

In the Interest of Perry WALLACE.

In the Interest of Christopher VINCENT.

In the Interest of Gilbert ORSINI.

In the Interest of Jamal CONNOR.

In the Interest of James MILES.

In the Interest of Terry FOSTER.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Leon JOHNSON.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Ronnie PIERCE.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Robert JACOBS.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Robert LEWIS, Jr.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Ali SCOTT.

COMMONWEALTH of Pennsylvania, Appellant,

v.

David GILES.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Lawrence GOUCH.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Kenneth GRAHAM.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Michael JENKINS.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Michael HATTON.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Cedric BOHANNON.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Edward BROWN.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Patrick GARRETT.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Timothy REEVES.

COMMONWEALTH of Pennsylvania, Appellant,

v.

James M. ROSSER.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Jose TORRES.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Marcus WARD.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Aaron WHITE.

**358**

COMMONWEALTH of Pennsylvania, Appellant,

v.

James WALKER.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Ricardo SEARS.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Dennis MASON.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Ralph RIVERA.

COMMONWEALTH of Pennsylvania, Appellant,

v.

George H. MALENEY.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Brian BRAXTON.

Superior Court of Pennsylvania.

Argued May 24, 1988.

Filed April 6, 1989.

Reargument Denied June 19, 1989.

359

Karen L. Grigsby, Assistant District Attorney, Philadelphia, for Com., appellant.

Before BROSKY, KELLY and HOFFMAN, JJ.

BROSKY, Judge:

This is a consolidated appeal by the Commonwealth seeking reversal of the order of the Court of Common Pleas granting new adjudicatory hearings to all defendants who had various hearings before Judge Mary Rose Fante Cunningham.

This relief was granted because Judge Cunningham had, for a period of several months, been working as an "undercover agent" of the FBI regarding illegal payments by union officials to Common Pleas judges in Philadelphia. Judge Cunningham wore a recording device and recorded conversations with other judges for the benefit of Federal authorities. During this period of time Judge Cunningham continued to preside over criminal matters.

The history of these cases is as follows. In December, 1985, Judge Cunningham accepted $300.00 from Steven Traitz, Jr., an official of the Roofers' Union. Unbeknownst to either party the transaction was tape recorded by Federal agents. After learning that the conversation had been recorded, and being confronted by authorities, Judge Cunningham agreed to cooperate with the FBI in an ongoing investigation concerning cash gifts from the Roofers' Union to certain judges of the Philadelphia Court of Common Pleas. Part of Judge Cunningham's agreement with the FBI and the U.S. Attorney's Office was that she would tape record conversations as requested by the FBI. The letter of agreement provided that no Federal or state laws would be violated in the course of Judge Cunningham's cooperation, and explicitly stated that no immunity from state prosecution or other disciplinary proceedings would be afforded. However, the agreement promised that Federal authorities would make known to any court or other investigating or prosecuting body the full extent of the Judge's cooperation.

The period of Judge Cunningham's cooperation extended from February 12, 1986 through November 13, 1986. On

November 17, 1986, the Judge's involvement became publicly disclosed. Prior to this date, these facts were known only to the Judge herself, certain officials of the FBI, the Office of the United States Attorney, and the Judge's husband. During this time, Judge Cunningham actively participated in electronic eavesdropping by wearing a hidden recording device and surreptitiously recording conversations with Judge Mario Driggs and Judge Esther Sylvester, both of whom were subsequently indicted on Federal charges arising out of cash gifts received from the Roofers' Union. During this period, Judge Cunningham continued to preside in criminal and juvenile matters. On November 19, 1986, after her involvement became publicly known, Judge Cunningham was transferred by the Administrative Judge to the Family Court Division to hear non-criminal matters. On February 2, 1987, she was suspended by Order of the Supreme Court of Pennsylvania pending further action by the Court or its agencies.

Beginning on December 3, 1986, the Defender Association of Philadelphia, on behalf of twenty-nine appellees, filed motions seeking the nullification of all judicial actions taken in their respective cases by Judge Cunningham while she was simultaneously acting as an "undercover agent." [1] The Judge's actions were challenged as violative of the Pennsylvania Constitution's separation of powers doctrine, the federal guarantee of due process of law, and Pennsylvania case law requiring the recusal of a judge where even the appearance of impropriety surfaced. The appellees also alleged that Judge Cunningham had a real and tangible bias in their cases, since she was subject to prosecution for her actions by the District Attorney of Philadelphia, the prosecuting authority in each of the cases before her.

In the interest of judicial economy, the motions were assigned to the Honorable Carolyn Engel Temin of the Court of Common Pleas, Criminal Trial Division, for disposition. Judge Temin, finding for appellees, granted relief as

1. Additional petitions raising the same issues were similarly filed by private counsel.

follows: each appellee who had any portion of his case handled by Judge Cunningham was granted new proceedings, e.g. adjudicatory, preliminary and certification hearings, Municipal Court trials, and hearings on motions to quash. If the same result was obtained as at the original hearing, the case would be returned to its current status. All orders granting this limited relief were stayed pending appellate review.

The Commonwealth then filed an Application for the Assumption of Plenary Jurisdiction in the Pennsylvania Supreme Court, a request which the appellees joined. However, the Supreme Court denied this application. Subsequently, appellees filed motions in the Superior Court to quash the Commonwealth's appeals in 23 of the 32 cases, alleging that they were interlocutory. This court granted the motions to quash, but reinstated the appeals upon the Commonwealth's Petition for Permission to File an Interlocutory Appeal, consolidating them with nine appeals of right in which this court's jurisdiction had not been challenged. On appeal, the Commonwealth seeks reversal of Judge Temin's order granting all thirty-two appellees relief.

In granting the relief discussed above, the trial court stated that since Judge Cunningham agreed to cooperate as an undercover investigator for federal authorities on condition that her cooperation be made known to anyone who might be prosecuting her in the future, she placed herself in a position where she may have had a bias. As such, where the rights of defendants are involved, that bias must be revealed. Judge Temin's opinion states that "[w]hen that person is a witness, such facts must be made known to the judge or jury. To do otherwise would deny the defendant his Sixth Amendment right to confrontation. *Commonwealth v. Evans*, 511 Pa. 214, 512 A.2d 626 (1986). It follows that where the person is a judge, the facts must be revealed to the attorneys representing the litigants appearing before her and to do otherwise denies the litigants their Fifth and Fourteenth Amendment due process rights to an impartial tribunal."

Although rare, instances of judicial bias are not unprecedented in Pennsylvania. In *Commonwealth v. Bryant*, 328 Pa.Super. 1, 476 A.2d 422 (1984), a panel of this court remanded for a redetermination of post-verdict motions and sentencing should that be necessary after disposal of post-verdict motions. This determination followed proceedings which disclosed that the trial judge had commented that, in order to generate pre-election publicity for himself, the date for a convicted individual's sentencing would be moved up to the day preceding an election in which the judge was a candidate and that he would award the maximum possible sentence.

The appellant sought recusal of that judge from a panel of judges hearing both the recusal motion and the post-verdict motions. This was not done and the decision was appealed. The Commonwealth argued that empanelling an en banc court adequately safeguarded appellant's right to an unbiased decision and the public's confidence in the impartiality of the judicial decision-making process.

We disagreed and vacated the judgment of sentence stating: "[w]hile a court en banc may attenuate the possibility of judicial prejudice, having the challenged judge as a member of the panel does not adequately preserve the integrity of the recusal hearing." 476 A.2d at 426. Implicit in this statement is the principle that not only will bias and partiality be grounds for remedial action but also that even the appearance of bias and partiality cannot be tolerated. This principle is illustrated in language of our Supreme Court in *Commonwealth v. Boyle*, 498 Pa. 486, 447 A.2d 250 (1982), where they stated:

> A jurist's impartiality is called into question whenever he has doubts as to his ability to preside objectively and fairly in the proceeding or where there exists factors or circumstances that may reasonably question the jurist's impartiality in the matter. *Commonwealth v. Perry*, 468 Pa. 515, 364 A.2d 312 (1976); *Commonwealth v. Goodman*, 454 Pa. 358, 311 A.2d 652 (1973).

The Court also states that "[r]ecusal is required whenever there is substantial doubt as to a jurist's ability to preside impartially." Id., 447 A.2d at 252.

In *Commonwealth v. Berrigan*, 369 Pa.Super. 145, 535 A.2d 91 (1987), this court, sitting en banc, stated "[a]fter carefully considering the record as a whole, we conclude that one might reasonably question the impartiality of the trial judge in this case and that resentencing is in order." Id., 535 A.2d at 104. It is important to note that we did not find that the trial judge was in fact biased or that the appellant had been prejudiced in the form of receiving a greater sentence than would have been expected from an impartial judge. We simply concluded that because *one could reasonably question* the impartiality of the trial judge it was improper for him to sentence the appellant. As such, appellant was entitled to a resentencing in front of a different judge. There are perhaps several reasons for taking such a strong position on judicial bias, among them are due process guarantees.

The United States Supreme Court has previously set forth standards for fairness and impartiality of trial judges in appeasement of due process guarantees. Justice Black writing for the court in *In Re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955), stated:

A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that "Every procedure which would offer a possible temptation to the average man as a judge ... not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law." *Tumey v. State of Ohio*, 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71

L.Ed. 749 (1927). Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way "justice must satisfy the appearance of justice." *Offutt v. United States,* 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11. (1954).

The passage speaks for itself in unequivocal and uncompromising fashion. Due process will be violated not only if one actually fails to receive an unbiased tribunal, but also if circumstances are such as to provide temptation away from a truly unbiased and impartial tribunal. In such cases the integrity of the result is compromised to an intolerable degree and the result cannot be considered a product of due process of law. If there was any doubt as to the ongoing validity of this stance, it appears the court's more recent decision in *Aetna Life Insurance Company v. Lavoie,* 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986), reaffirmed this principle.

The *Aetna Life Insurance* case involved a situation where the right to punitive damages for a bad faith refusal of an insured to pay benefits was being litigated. An award against Aetna in the amount of $3.5 million was appealed to the Alabama Supreme Court and affirmed in a 5-4 decision. One of the justices in the majority, Justice Embry, also happened to be a litigant in a class action suit against insurance companies which involved issues of punitive damages. Aetna sought a rehearing of the case and challenged the participation of Justice Embry in both the original decision and rehearing petition. Justice Embry nonetheless participated in the decision of the application for rehearing which was denied by a 5-4 vote. On appeal to the United States Supreme Court the decision was vacated and remanded.

The Court addressed two specific claims of prejudice or bias raised by Aetna. The first, it was argued, was the general hostility towards dilatory insurance companies which was evident from the depositions of Justice Embry.

The Court stated that only in extreme cases would disqualification on this basis be constitutionally required while reaching the conclusion that appellant's arguments fell short of that status. The second claim was that Justice Embry's status as a plaintiff in a similar case against an insurance company created an interest in the outcome of the *Aetna* case. With this contention, the Court agreed. The Court found that the *Aetna* case "had the clear and immediate effect of enhancing both the legal status and the settlement value of his own case." 106 S.Ct. at 1586. The Court went on to state: "we make clear that we are not required to decide whether in fact Justice Embry was influenced, but only whether sitting on the case then before the Supreme Court of Alabama 'would offer a possible temptation ... to the average [judge] ... [to] lead him to not to hold the balance nice, clear and true.'" Id., at 1587.

The *Aetna* and *Murchison* cases discussed minimum levels of scrutiny or protection consistent with due process standards while indicating that the states are free to take an even stricter stance on the issue. The cases here in Pennsylvania, while not explicitly indicating a stricter approach than that constitutionally mandated, do seem to be strict indeed. In *Commonwealth v. Darush*, 501 Pa. 15, 459 A.2d 727 (1983), our Supreme Court stated:

> Although we find no evidence of bias and are convinced the judge acted in what he sincerely felt was a proper manner, we nevertheless believe appellant is entitled to resentencing by another judge because certain remarks the judge *was said to have made* about appellant could raise a reasonable question concerning his impartiality in sentencing.

459 A.2d at 730. The Court concluded its opinion by stating:

> We are convinced the trial court acted with complete integrity in assuring appellant it harbored no prejudice against him. Moreover, we do not imply that the hearsay statements, said to show bias, affected sentencing. How-

ever, a defendant is entitled to sentencing by a judge whose impartiality cannot reasonably be questioned.

459 A.2d at 732.

In similar fashion, this Court also found that the appearance of potential or possible bias or partiality required vacation of a support order and a remand for assignment of an out-of-county judge or a change of venue, in the case of *Commonwealth ex rel. Armor v. Armor*, 263 Pa.Super. 353, 398 A.2d 173 (1978). The facts precipitating this holding in *Armor* were that a woman who was involved in support proceedings in Montgomery County had been remarried to a Common Pleas Judge in that county. We indicated our disagreement with appellant's contention that he could not receive a fair and impartial hearing in Montgomery County. Nevertheless, we disapproved of the procedure whereby any of the judges of the Court of Common Pleas of Montgomery County were called upon to rule on support matters relating to the wife of one of the judges while adding the following commentary:

> We immediately add that our detailed review of this record does not reveal a single instance of bias, prejudice or unfairness. Nevertheless, the judicial system must be kept, like Caesar's wife, above reproach. Under the circumstances here presented, the appearance of appellee before the bench of Montgomery County, involving as it must her remarriage to a member of that bench, demands that such a case not be heard by any of the judge-husband's colleagues.

398 A.2d at 174.

In the context of the above recited case law, we do not have great difficulty in affirming the trial court's disposition of these consolidated appeals. Judge Cunningham did receive a sum of money from an official in a labor union. This fact alone would have the effect of eroding the confidence of the public in her dispositions and creating a lack of integrity in those dispositions. However, this particular fact must be considered minimal in comparison to the fact that Judge Cunningham then agreed to assist the federal

authorities in criminal investigations of other judges on the bench in exchange for a promise that her cooperation would be made known to prosecuting authorities should she be charged herself. Not only did she align herself with a prosecuting office but she also clearly recognized the possibility that her "cooperation" might be a factor favorable to her in the event of such prosecution. Undoubtedly, the threat of prosecution could tempt an ordinary person to not hold the balance between the defendant and the Commonwealth nice, clear and true. Just as clearly these circumstances could lead reasonable individuals to question her impartiality.

The public confidence in the integrity of the criminal justice system will not be served by leaving unredressed the role of a judge in deciding key phases of criminal prosecution while also working for prosecuting authorities during the same period of time. All of these factors are also exacerbated by the fact that Judge Cunningham was the primary decision making body in the cases on appeal here. While the possibility that judicial bias will actually work to prejudice a defendant is attenuated somewhat when the judge presides over a jury trial, the same cannot be said when the judge makes the decision in question herself. In such cases the potential for prejudice is much greater and the possibility of bias must be even more carefully safeguarded. See, *Commonwealth v. Berrigan*, 369 Pa.Super. 145, 535 A.2d 91, 104 (1987).

Even if the judge in such circumstances makes a conscious effort to decide impartially, there is always an unwarranted risk that the circumstances will work on a subconscious level to influence the decision despite the best efforts of the judge to remain impartial. Consequently, for the above reasons, we believe the threat of bias and appearance of impropriety was significant enough in the present case under due process guarantees and our own judicial decisions to warrant the limited relief granted below.

Order affirmed.[2]

KELLY, J., files a dissenting opinion.

KELLY, Judge, dissenting:

I dissent. The majority opinion is in direct and irreconcilable conflict with prior opinions of this Court. *See Commonwealth v. Weeks*, 381 Pa.Super. 411, 554 A.2d 68 (1989); *Commonwealth v. Hewett*, 380 Pa.Super. 334, 551 A.2d 1080 (1988); *see also Reilly v. SEPTA*, 507 Pa. 204, 489 A.2d 1291 (1985); *Commonwealth v. Vance*, 376 Pa.Super. 493, 546 A.2d 632 (1988).

The juvenile defendants in these consolidated cases have made no attempt to establish a nexus between Judge Cunningham's alleged and proven misconduct and the dispositions of various motions which they challenge. Review of the record in each case reveals no such nexus, no errors of law, and no apparent abuse of discretion with respect to these cases. I find no basis to vacate orders entered by Judge Cunningham prior to her removal from the bench without establishing a clear nexus between her alleged and proven misconduct and the challenged orders. *See Commonwealth v. Hewett, supra; see also Commonwealth v. Weeks, supra* (following *Hewett*).

I note that the cases relied upon by the majority to reach a contrary conclusion fall into two general categories: cases involving *pre*-disposition motions for recusal due to an *appearance* of impropriety; and, cases involving *post*-disposition motions for new proceedings when a clear nexus between judicial misconduct and the challenged disposition had been established. Because I find neither category applicable to the cases presented here, I find the cases cited inapposite, and the conclusion reached by the majority unsupported.

Based upon the foregoing, I dissent.

**2.** We would add that if, at the time of this opinion, some of the appellees would prefer not to go through any further proceedings, they may refuse the relief granted.