617 A.2d 707

In the Interest of Anthony McFALL at No. 1466, C.P. Phila. Cty., Juv. Div., No. 6403–86–9 (No. 101 E.D. Appeal Docket 1990).

In the Interest of Robert WISE at No. 1467, C.P. Phila. Cty., Crim. Div., No. 2759–86–4; Juv. No. 268347 (No. 102 E.D. Appeal Docket 1990).

In the Interest of Anthony WHETSTONE at No. 1468, C.P. Phila. Cty., Crim. Div., Juv. Pet. 8266–85–10; Juv. No. 242017 (No. 103 E.D. Appeal Docket 1990).

In the Interest of Perry WALLACE at No. 1469, C.P. Phila. Cty., Crim. Div., Juv.Pet. 9577–85–12; Juv. No. 266159 (No. 104 E.D. Appeal Docket 1990).

In the Interest of Christopher VINCENT at No. 1470, C.P. Phila. Cty., Crim. Div., Juv. Pet. 2817–86–4; Juv. No. 268373 (No. 105 E.D. Appeal Docket 1990).

In the Interest of Gilbert ORSINI at No. 1471, C.P. Phila. Cty., Crim. Div., Pet. 9609–85–12, Juv. No. 266189 (No. 106 E.D. Appeal Docket 1990).

In the Interest of Jamal CONNOR at No. 1472, C.P. Phila. Cty., Crim. Div., Juv. Pet. 3018–86–4, Juv. No. 257899 (No. 107 E.D. Appeal Docket 1990).

In the Interest of James MILES at No. 1473, C.P. Phila. Cty., Crim. Div., Juv. Pet. 5546–85–7; Juv. No. 260135 (No. 108 E.D. Appeal Docket 1990).

In the Interest of Terry FOSTER at No. 1474, C.P. Phila. Cty., Crim. Div., Juv. Pet. 2961–85–4; Juv. No. 260847 (No. 109 E.D. Appeal Docket 1990).

COMMONWEALTH

v.

Leon JOHNSON at No. 1475, C.P. Phila. Cty., Crim. Div., No. 691–693 March Term, 1986 (No. 110 E.D. Appeal Docket 1990).

COMMONWEALTH

v.

Ronald PIERCE at No. 1476, C.P. Phila. Cty., Crim. Div., No. 2235–2238 August Term, 1986 (No. 111 E.D. Appeal Docket 1990).

COMMONWEALTH

v.

Robert JACOBS at No. 1466, C.P. Phila. Cty., Crim. Div., No. 1904–1905 June Term, 1986 (No. 112 E.D. Appeal Docket 1990).

COMMONWEALTH

v.

Robert LEWIS at No. 1478, C.P. Phila. Cty., Crim. Div., No. 340–344 July Term, 1986 (No. 113 E.D. Appeal Docket 1990).

COMMONWEALTH

v.

Ali SCOTT at No. 1479, C.P. Phila. Cty., Crim. Div., No. 3081–3086 May Term, 1986 (No. 114 E.D. Appeal Docket 1990).

COMMONWEALTH

v.

David GILES at No. 1480, C.P. Phila. Cty., Crim.Div., No. 3237–3239 April Term, 1986 (No. 115 E.D. Appeal Docket 1990).

COMMONWEALTH

v.

Lawrence GOUCH at No. 1481, C.P. Phila. Cty., Crim. Div., No. 782 Nov. Term, 1986 (No. 116 E.D. Appeal Docket 1990).

COMMONWEALTH

v.

Michael JENKINS at No. 1483, C.P. Phila. Cty., Crim.Div., No. 2282 Nov. Term, 1986 (No. 117 E.D. Appeal Docket 1990).

COMMONWEALTH

v.

Michael HATTON at No. 1484, C.P. Phila. Cty., Crim. Div., No. 2596–2601 August Term, 1986 (No. 118 E.D. Appeal Docket 1990).

COMMONWEALTH

v.

Cedric BOHANNON at No. 1485, C.P. Phila. Cty.,
Crim. Div., No. 2642–2645 March Term, 1986
(No. 119 E.D. Appeal Docket 1990).

COMMONWEALTH

v.

Edward BROWN at No. 1486, C.P. Phila. Cty., Crim. Div., No.
856–858 May Term, 1986 (No. 120 E.D. Appeal Docket 1990).

COMMONWEALTH

v.

Patrick GARRETT at No. 1487, C.P. Phila. Cty., Crim. Div., No.
309–314 May Term 1986 (No. 121 E.D. Appeal Docket 1990).

COMMONWEALTH

v.

James M. ROSSER at No. 1489, C.P. Phila. Cty.,
Crim. Div., No. 1852–1860 March Term, 1986
(No. 122 E.D. Appeal Docket 1990).

COMMONWEALTH

v.

Jose TORRES at No. 1490, C.P. Phila. Cty., Crim.
Div., No. 2138–2146 March Term, 1986 (No.
123 E.D. Appeal Docket 1990).

COMMONWEALTH

v.

Marcus WARD at No. 1491, C.P. Phila. Cty.,
Crim. Div., No. 291–293 May Term, 1986
(No. 124 E.D. Appeal Docket 1990).

COMMONWEALTH

v.

Aaron WHITE at No. 1492, C.P. Phila. Cty., Crim. Div., No. 296–
298 May Term, 1986 (No. 125 E.D. Appeal Docket 1990).

COMMONWEALTH

v.

James WALKER at No. 1493, C.P. Phila. Cty., Crim. Div., No.
286–290 May Term, 1986 (No. 126 E.D. Appeal Docket 1990).

COMMONWEALTH

v.

Ricardo SEARS at No. 1494, C.P. Phila. Cty.,
Crim. Div., No. 2258–2266 Aug. Term, 1986
(No. 127 E.D. Appeal Docket 1990).

COMMONWEALTH

v.

Dennis MASON at No. 1495, C.P. Phila. Cty., Crim.
Div., No. 396–403 December Term, 1986 (No. 128
E.D. Appeal Docket 1990).

COMMONWEALTH

v.

Ralph RIVERA at No. 1496, C.P. Phila. Cty., Crim.
Div., No. 1489–1490 February Term, 1986 (No.
129 E.D. Appeal Docket 1990).

COMMONWEALTH

v.

George H. MALENEY at No. 1497, C.P. Phila. Cty.,
Crim. Div., No. 2333–2334 November Term, 1986
(No. 130 E.D. Appeal Docket 1990).

COMMONWEALTH

v.

Brian BRAXTON at No. 1159, C.P. Phila. Cty., Crim.
Div., No. 2254–2257 August Term, 1986 (No. 131
E.D. Appeal Docket 1990).

Appeals of COMMONWEALTH of Pennsylvania.

Supreme Court of Pennsylvania.

Argued April 9, 1991.

Decided Nov. 25, 1992.

28

Ronald Eisenberg, Chief, Appeals Div., Gaele McLaughlin Barthold, Deputy Dist. Atty., Karen Grigsby, Asst. Dist. Atty., for appellant.

John W. Packel, Chief, Appeals Div., Jules Epstein, Asst. Defender, Thomas Johnson, Harvey Yanks, William James, George Newman, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

NIX, Chief Justice.

This is an appeal by the Commonwealth of Pennsylvania from an Order of the Superior Court affirming an Order of the Court of Common Pleas granting new proceedings for twenty-nine defendants in cases where former Judge Mary Rose Fante Cunningham[1] presided. The cases of the twenty-nine appellees were consolidated[2] in the interest of judicial economy and assigned to Judge Carolyn Engel Temin of the Court of Common Pleas, Criminal Trial Division, for disposition. Judge Temin found for appellees. Each appellee who had any portion of his case handled by Cunningham was granted new proceedings, *i.e.,* adjudicatory proceedings, preliminary and

1. Hereinafter referred to as "Cunningham".

2. The present issue was originally raised as part of post-verdict motions filed on behalf of defendant Leon Johnson. Commonwealth v. Johnson, 15 Phila.Cty.Rptr. 426 (1986). Subsequently, the Defender Association of Philadelphia intervened and filed a petition raising the identical issue on behalf of Leon Johnson and the twenty-eight other defendants whose matters were at various stages of the adjudicatory process.

certification hearings, municipal court trials, and hearings on motions to quash.

The issue before this Court is whether it was a denial of the appellees' right to a fair and impartial tribunal for a judge to preside over their cases without revealing circumstances that raise questions as to her impartiality. Specifically, Cunningham became an undercover agent for federal law enforcement authorities in exchange for a promise that those authorities would make her cooperation known to any agency that chose to prosecute her for accepting a gift from a potential litigant. In this instance, Cunningham's potential prosecutors were the very individuals that appeared before her to prosecute the appellees. Restated, the question is whether the air of impropriety arising from such a setting is a sufficient basis for vitiating the proceedings without a demonstration of actual proof of prejudice. We hold herein that the impartiality of the court, which is a fundamental prerequisite of a fair trial, must be deemed compromised by appearance alone, thus eliminating the need for establishing actual prejudice. Therefore, for the reasons that follow, we affirm the order of the Superior Court affirming Judge Temin's grant of new proceedings to all appellees whose cases were argued before Cunningham during the time she cooperated with the Federal Bureau of Investigation ("F.B.I.").

The facts were stipulated by the parties. Cunningham was recorded accepting a $300.00 gift from Steven Traitz, Jr., an official of the Roofers Union. Upon learning that the conversation had been recorded, and being confronted by federal authorities, Cunningham agreed to cooperate with the F.B.I. in an ongoing investigation involving cash gifts from the Roofers Union to various judges of the Philadelphia County Court of Common Pleas. One portion of the agreement stipulated that Cunningham would record conversations as requested by the F.B.I. This agreement clearly stated that no immunity from the prosecution or other disciplinary proceedings would be afforded. However, the agreement explicitly promised that federal authorities would make known to any

court or other investigating or prosecuting body the full extent of Cunningham's cooperation.

Cunningham's cooperation with the F.B.I. extended from February 12, 1986 through November 13, 1986. Cunningham wore a hidden recording device and secretly recorded conversations with two other judges, both of whom were subsequently indicted on federal charges arising out of cash gifts received from the Roofers Union. While working for the F.B.I., Cunningham continued to preside over criminal and juvenile matters. Her involvement was publicly disclosed on November 17, 1986. Prior to that date, Cunningham's agreement was known only to her and her husband, certain officials of the F.B.I., and the office of the U.S. Attorney. Following the public disclosure of her involvement, this Court suspended Cunningham pending further investigation.

Commencing on December 3, 1986, the Defender Association of Philadelphia, on behalf of twenty-nine [3] appellees, filed motions seeking the nullification of all judicial actions taken in their respective cases by Cunningham while she was simultaneously acting as an undercover agent. Anthony McFall was one of the appellees represented by the Defender Association. Cunningham's actions were challenged as violative of the Pennsylvania Constitution's separation of powers doctrine, the federal constitutional guarantee of due process of law, and Pennsylvania case law requiring the recusal of a judge where even the appearance of impropriety surfaced.

All motions filed by appellees were assigned to the Honorable Carolyn Temin of the Court of Common Pleas of Philadelphia, Criminal Trial Division, for disposition. Judge Temin found for appellees, holding that due process was violated by Cunningham's failure to reveal her situation and potential bias. Judge Temin's decision entitled each appellee to a new proceeding before another judge. All orders granting this limited relief were stayed pending appellate review.

The Commonwealth appealed Judge Temin's orders to the Superior Court and simultaneously sought plenary review by

3. Two appeals have since been stricken.

this Court. We denied the Commonwealth's application on May 19, 1987. Cunningham was removed from office by this Court on February 25, 1988. *In re Cunningham*, 517 Pa. 417, 538 A.2d 473, *appeal dismissed sub nom. White v. Judicial Inquiry & Review Bd.*, 488 U.S. 805, 109 S.Ct. 36, 102 L.Ed.2d 16 (1988).

On April 6, 1989, the Superior Court affirmed Judge Temin's orders, and reasoned:

> The public confidence in the integrity of the criminal justice system will not be served by leaving unredressed the role of a judge in deciding key phases of criminal prosecution while also working for prosecuting authorities during the same period of time. All of these factors are also exacerbated by the fact that Judge Cunningham was the primary decision making body in the cases on appeal here.

*In re McFall, et al.*, 383 Pa.Super. 356, 368, 556 A.2d 1370, 1376 (1989). A Petition for Reconsideration or Reargument was denied on June 19, 1989; thereafter, on July 23, 1990, we granted allocatur. *Commonwealth v. McFall*, 525 Pa. 632, 578 A.2d 927 (1990).

Appellant in the instant case argues that the cases in which Cunningham presided during the period she was working as an agent for the federal authorities had no relation to the F.B.I. investigation, and thus, contends that Cunningham's ability to maintain her impartiality was not influenced. Appellant also argues that the appellees have not demonstrated that Cunningham had a direct, personal, substantial, pecuniary interest in the cases in which she presided; therefore, the Superior Court's decision should be reversed. Appellant's argument centers on the appellees' failure to demonstrate that they were prejudiced.

Conversely, appellees contend that as a result of Cunningham's participation with federal authorities, defendants in her courtroom were denied due process of the law. They claim to have suffered such a denial even though the reasons that suggest partiality were not discovered until after the litigation had concluded. Appellees argue that Cunningham could not

have been impartial in discharging her judicial functions where she was beholden to one of the parties appearing before her. This was not a mere tangential distraction; rather, her liberty as well as her career weighed in the balance.

We now focus on restoring justice to appellees whose rights to an impartial tribunal have been trampled upon and also to repair any damage to the public's confidence in the courts of this Commonwealth. The circumstances in the instant case are such that this Court need not reach the constitutional issue of due process because we conclude that the appearance of impropriety compels us to affirm the grant of new proceedings in view of the blatant potential conflict of interest of the trial judge.

In order for the integrity of the judiciary to be compromised, we have held that a judge's behavior is not required to rise to a level of actual prejudice, but the appearance of impropriety is sufficient. *In re Cunningham*, 517 Pa. at 430, 538 A.2d at 480; *Commonwealth v. Darush*, 501 Pa. 15, 24, 459 A.2d 727, 732 (1983); *Commonwealth v. Goodman*, 454 Pa. 358, 361, 311 A.2d 652, 654 (1973). In *Darush*, where the trial judge could not affirmatively deny making certain derogatory remarks concerning appellant,[4] this Court held that the appellant was entitled to resentencing by another judge because the comments alleged to have been made by the first judge could raise a reasonable question concerning his impartiality. *Id.* at 24, 459 A.2d at 732. Moreover, we reasoned that although actual prejudice was not found, appellant was entitled to sentencing by a judge whose impartiality could not reasonably be questioned. *Id.*

In the instant case, we again find that the appearance of impropriety is sufficient justification for the grant of new proceedings before another judge. We find that Cunningham's course of conduct created the appearance of impropriety. First, she accepted a gift from a potential litigant. Second, she became aware of the fact that the F.B.I. had discov-

4. Appellant did not prove that the trial judge made the remarks. Rather, this Court noted that the trial court did not affirmatively deny or admit making the remarks.

ered her misconduct. Finally, Cunningham decided to assist the F.B.I. in their investigation of other judges suspected of accepting gifts. Cunningham's assistance was in exchange for the F.B.I.'s promise to disclose her cooperation to any other authorities who chose to prosecute her. One could reasonably conclude that, under the circumstances, Cunningham's cooperation with the United States Attorney's office cast her in the role of a confederate of the prosecutors in the appellees' cases.

The disturbing factor is not Cunningham's cooperation alone, but rather the benefit she expected would derive from her cooperation. Her agreement, whether coerced or formed under her own free will, presents a situation palpably creating a circumstance where she would have an interest in the outcome of the criminal cases tried before her.

 "A judge should respect and comply with the law and should conduct [her]self at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Code of Judicial Conduct, Canon 2(A). "A judge should not allow [her] family, social, or other relationships to influence [her] judicial conduct or judgment." Code of Judicial Conduct, Canon 2(B). Recusal is required wherever there is substantial doubt as to the jurist's ability to preside impartially. *Commonwealth v. Darush*, 501 Pa. at 21, 459 A.2d at 731; *Commonwealth v. Boyle*, 498 Pa. 486, 490, 447 A.2d 250, 252 (1982); *Commonwealth v. Knighton*, 490 Pa. 16, 23, 415 A.2d 9, 13 (1980). A jurist's impartiality is called into question whenever there are factors or circumstances that may reasonably question the jurist's impartiality in the matter. *Commonwealth v. Darush*, 501 Pa. at 21, 459 A.2d at 731; *Commonwealth v. Boyle*, 498 Pa. at 490 n. 4, 447 A.2d at 252 n. 4.

The circumstances under which Cunningham participated as an "agent" of both the judiciary and the prosecution created an environment of partiality which is unacceptable. She continued to hear criminal cases while cooperating with the federal authorities in exchange for a promise that her cooperation would be made known to the District Attorney of Phila-

delphia, whose office prosecuted each appellee and would be the same office that would make the judgment as to her prosecution. "[A]ny tribunal permitted by law to try cases and controversies must not only be unbiased but must avoid even the appearance of bias." *Horn v. Township of Hilltown,* 461 Pa. 745, 747, 337 A.2d 858, 859–60 (1975) (quoting *Gardner v. Repasky,* 434 Pa. 126, 129, 252 A.2d 704, 706 (1969) (quoting *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 150, 89 S.Ct. 337, 340, 21 L.Ed.2d 301, 305 (1968))).[5]

"[T]he appearance of bias or prejudice can be as damaging to public confidence in the administration of justice as would be the actual presence of either of these elements." *Commonwealth v. Goodman,* 454 Pa. at 361, 311 A.2d at 654. In this case the appearance of bias is obvious. Cunningham's agreement with the prosecutorial arm was a *quid pro quo* bargain. She agreed to assist the F.B.I. in their racketeering investigation, while the F.B.I. promised to make Cunningham's cooperation known to the Pennsylvania authorities who would conduct the prosecution of Cunningham for her wrongdoing. Moreover, these same Pennsylvania authorities were the very authorities who appeared before Cunningham to prosecute the appellees. Consequently, this obvious conflict of interest eradicated the appearance of justice in Cunningham's courtroom.

A judge can not be a jurist in his own case and must not be permitted to try cases where she has an interest in the outcome. *In re Schlesinger,* 404 Pa. 584, 598, 172 A.2d 835, 840–41 (1961) (discussing federal due process guarantees). Cunningham cooperated with prosecutorial authorities while simultaneously purporting to perform her duties as an impartial member of the judiciary. The conflict is obvious. Cunningham's direct, personal, substantial, and pecuniary interests were that she faced potential prosecution by the same authorities that prosecuted defendants in her courtroom every day. Contrary to appellant's assertions, when Cunningham

5. These cases discussed how the accused parties were denied due process under the United States Constitution.

presided over criminal cases while simultaneously agreeing to work for the prosecution, the integrity of the "proceedings" was seriously compromised.[6]

█ A tribunal is either fair or unfair. There is no need to find actual prejudice, but rather, the appearance of prejudice is sufficient to warrant the grant of new proceedings. A trial judge should not only avoid impropriety but must also avoid the appearance of impropriety. *In re Cunningham,* 517 Pa. at 430, 538 A.2d at 480; *Commonwealth v. Perry,* 468 Pa. 515, 524, 364 A.2d 312, 317 (1976). Cunningham's agreement with the F.B.I. provided that the F.B.I. would make known to any potential prosecutor of the Judge the full extent of her cooperation. The District Attorney's Office of Philadelphia was one such potential prosecutor. The District Attorney's Office also handled the cases of appellees who were before Cunningham. The possibility existed that Cunningham may have treated the District Attorney's Office in a way so as to maximize her chances for leniency should it choose to prosecute her. This possibility is all that is needed to establish the appearance of impropriety.

█ Finally, appellant contends that the grant of new proceedings for appellees was inappropriate. We disagree. Regardless of whether the proceedings were in the form of a trial, juvenile certification hearings, post-trial motions, or preliminary hearings, this Commonwealth protects the constitutional rights of the accused to have a fair tribunal to resolve the issues therein. To hold that Cunningham's potential for partiality existed when she presided over full trials but lacked

6. Although we are not relying on the United States Constitution or federal case law, we find law in that jurisdiction to be germane and informative. *See Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986). In *Vasquez,* Justice Marshall, writing for the majority, stated: "When constitutional error calls into question the objectivity of those charged with bringing a defendant to judgment, a reviewing court can neither indulge a presumption of regularity nor evaluate the resulting harm. Accordingly, when the trial judge is discovered to have had some basis for rendering a biased judgment, his actual motivations are hidden from review, and we must presume that the process was impaired." *Id.* at 263, 106 S.Ct. at 623, 88 L.Ed.2d at 609.

the same impact when she presided over juvenile certification hearings, etc. would be egregiously inconsistent. This type of taint at any stage of the process must necessarily offend our concept of fairness and may not be ignored or condoned.

Accordingly, we affirm the order of the Superior Court granting appellees new proceedings.

McDERMOTT, J., did not participate in the decision of this case.

PAPADAKOS, J., files a concurring opinion.

PAPADAKOS, Justice, concurring.

Although I join in the rationale of the majority and the conclusion, I must write separately to express my complete dissatisfaction with the reliance of the majority on the standard of "appearance of impropriety" as compelling the grant of new proceedings to the Appellants.

As the majority points out, Cunningham was engaged in a blatant potential conflict of interest in conducting criminal proceedings while she was acting covertly on behalf of prosecutors to obtain incriminating information against her colleagues on the bench.

I do not see an "appearance of impropriety" on the part of a judge who is acting covertly. The public is not aware of the conduct at the time of its commission, therefore, there cannot be an "appearance" of anything. Rather, I view the conduct of Cunningham as abhorrent and a complete denial of a fair trial to those brought before her while she sat as a judge in the criminal court. I view this as actual misconduct at the time of its commission and not as an appearance of impropriety long after the commission of the misconduct.

Every judge must know that you can't play both sides of the fence without bringing into focus the question of impartiality. Under such circumstances, every judge must know that recusal is in order. Cunningham's refusal to recuse and ask for assignment to another division of the court amounts to misconduct in my view. The possibility that such a reassignment

may have brought to light her clandestine operations must be weighed lightly in comparison with the heavy adherence to which we ascribe the principles of a fair and impartial judge presiding over the fate of those brought before the bar of the criminal courts. Their rights cannot be sacrificed for the sake of possibly bringing to justice other miscreants.