EDWARDS, Respondent, vs. EDWARDS, Appellant.*

*April 7—May 3, 1955.*

* Motion for rehearing denied, without costs, June 28, 1955.

For the appellant there was a brief by *Douglas, Omernik & Bitney* of Spooner, and oral argument by *Edward E. Omernik*.

For the respondent, Veda Stone, and Eau Claire County Department of Public Welfare, the cause was submitted on the brief of *V. O. Tronsdal,* district attorney of Eau Claire county, and *John D. Kaiser,* assistant district attorney and special counsel.

CURRIE, J. The controversy here presented involves the custody of the eleven-year-old son of divorced parents. The only legal issue presented is whether there was an abuse

of discretion on the part of the learned trial court in denying the father's application to have custody of the child transferred to himself. This necessitates a thorough review of the material evidence.

The plaintiff Palma O. Edwards and the defendant Franklin L. Edwards were married on November 15, 1942, and the only child by such marriage was Franklin Edwards, Jr., born in 1943.

In 1946 Mrs. Edwards instituted an action for divorce, the husband counterclaimed, and under date of August 24, 1946, a judgment for divorce was entered upon the husband's counterclaim. On September 26, 1946, the judgment of divorce was set aside and the parties resumed living together. Harmonious relations between the two did not continue for long because on March 17, 1947, Mrs. Edwards again commenced an action for divorce. By order of the court commissioner, pending the action, custody of Franklin, Jr., was awarded to Mrs. Edwards on condition that she would keep the boy in Eau Claire county. Later that summer she took the boy to visit Mr. Edwards, who was residing with his mother on a farm near the village of Radisson in Sawyer county. Mr. Edwards claimed that Mrs. Edwards was on this occasion intoxicated and in the company of another man, and Mr. Edwards, with the assistance of his brother, forcibly prevented Mrs. Edwards from removing the boy from the farm at the conclusion of the latter's visit there.

When this second divorce action was tried on its merits the husband was again awarded the divorce upon his counterclaim on the ground that Mrs. Edwards was guilty of cruel and inhuman treatment in consorting with other men. Custody of Franklin, Jr., was awarded to the father, he having retained such custody following the altercation which had taken place at the farm. The date of this second divorce decree was December 4, 1947.

In the summer of 1948, Mrs. Edwards applied to the court for a change of custody of the child, which application was denied by order of the court entered July 19, 1948, but this order did award temporary custody to Mrs. Edwards for a two-week period each six months.

Later in 1948, Mrs. Edwards attempted to illegally gain possession of the boy at the farm near Radisson and had succeeded to the extent of getting him into an automobile and was in the act of driving away with the child when Mr. Edwards seized a 30/30 rifle and fired at the car in an attempt to disable and stop it. A criminal charge was brought against Mr. Edwards because of this shooting incident, as a result of which, under date of December 14, 1948, he was sentenced to a term of from one to three years in the Green Bay reformatory.

After leaving for the reformatory, Mr. Edwards' mother assumed care of the boy and on December 24, 1948, turned him over to Palma Edwards for a two-week period, pursuant to the prior order of July 19, 1948. At the conclusion of such two-week period the child's mother failed to return him, and counsel for Mr. Edwards instituted contempt proceedings against her. Palma Edwards then filed a separate petition in which she requested that custody be changed from Mr. Edwards to herself. On February 17, 1949, Mrs. Edwards was married to one Arthur Carroll. Under date of April 11, 1949, a hearing was held by the court on such last-mentioned application for change of custody, and thereafter the court entered an order in which he found that neither parent was a fit and proper person to have custody of Franklin, Jr., and awarded such custody to Mrs. Veda Stone of the Eau Claire county public welfare department until the further order of the court.

Under date of September 6, 1949, Mrs. Stone placed the boy in the home of Mr. and Mrs. Leon Fouser. Mr. Fouser

is approximately forty-one years of age and his wife is a few years younger. The Fousers reside on a farm about eight miles south of Eau Caire and have one child (a daughter) of their own. While residing with the Fousers, Franklin, Jr., has attended school regularly and at times has led his class scholastically. For the past two consecutive summers he has attended the Y. M. C. A. Camp Manitou at Lower Long Lake for one week each, and also belongs to the 4-H club in the township in which he resides. He is studiously inclined and would like to be a teacher when he grows up.

Franklin Edwards, the boy's father, was released from the reformatory after serving fourteen months of his term and resumed living on his mother's farm near Radisson. After a few months he married and now has two daughters by this marriage, one aged three and the other aged two. Mr. Edwards' mother deeded the farm to Franklin and a brother, and went to Eau Claire to reside. The brother has agreed to deed his half interest in the farm to Franklin without compensation. This farm consists of 240 acres, of which approximately 60 acres have been cleared and are under cultivation, and the remaining acreage is brush and timberland. Mr. Edwards has erected a five-room house which at the time of the last court hearing on September 2, 1954, had not been completed, although the walls were insulated. It is equipped with running water with an outside septic tank for taking care of sewage, and plumbing fixtures had been bought and stored on the premises but were not as yet installed at the time of such last hearing. The farm is free of incumbrances but the personal property on the farm is incumbered by a $1,500 mortgage loan to a bank at Ladysmith. One half of each month's milk check is being applied on this loan to liquidate it. The livestock consists of at least 14 head of cattle and two horses, and the milk check is approximately $150 per month. During the summer of 1954, Mr. Edwards

also was employed by Sawyer county driving a truck at a compensation of approximately $300 per month, and expected to be employed during the winter cutting posts. In addition to the income from the milk check and from the county, he also was receiving $125 per month under the federal veterans' training program. Under this program he was taking a course in agriculture necessitating attending evening classes on certain evenings each month, but such training program and the income therefrom were to end December 16, 1954.

The state graded school in the village of Radisson is located less than one-half mile from the farm. This is a good school having approximately 100 students in attendance and four teachers. Such school has a school-lunch program under which hot lunches are supplied to students at the price of 15¢ per meal. Students completing the eighth grade at this school have the privilege of attending the high school at Winter, Wisconsin, and are transported from Radisson to Winter by school bus.

The evidence is undisputed that since the return of Franklin Edwards from the Green Bay reformatory in March, 1950, he has conducted himself in an exemplary manner and has the reputation in his community of being a hard worker.

During the five years that Franklin, Jr., has resided in the Fouser foster home, his mother has paid practically no attention to him and is now married to her third husband, a man by the name of Sandberg. On the other hand, while the Fousers' home is approximately 100 miles from Radisson, Mr. Edwards has visited the boy several times, has had his mother write letters to the boy, and occasionally has bought him presents.

In August, 1954, Franklin Edwards petitioned the court for an order changing the custody of Franklin, Jr., from Mrs. Stone back to himself, which came on for hearing before the court on September 2, 1954. From the testimony

taken at such hearing it appears that Franklin, Jr., had been visiting his father for a period of six days immediately preceding such hearing and was enjoying such visit. Mrs. Stone was one of the witnesses who testified at such hearing and she stated that in her opinion it would be for the best interests of the boy if the custody were not changed, but advanced no reasons for such opinion. There was no testimony which was in any way derogatory of the father, Franklin Edwards, other than the incident already related of his attempt to use force to retain custody of the boy.

At the conclusion of the hearing the learned trial court announced his decision from the bench denying the father's application. In such decision the trial court recounted the past struggles which had taken place between the boy's mother and father over the boy's custody, culminating in the shooting incident late in 1948. Following such summary of prior events, the court stated his conclusion as follows:

"Now, upon that background and what has happened to the boy where he has now achieved a place of security and he's here available to be visited by his parents and he to visit them, it is my conclusion that the former ruling must stand, that is, upon what has happened and what did happen to this boy while the parents alternately did have custody of the boy either by force of law or by the force of their own actions, that neither should have the custody, now have the custody of the boy, and that neither is fit to have his custody upon the basis of those facts and that the custody of the child will remain with Mrs. Stone until the further order of the court."

It is our considered judgment that the learned trial judge denied the father's application for change of custody on the following two erroneous grounds: (1) That such father was not a fit person to have custody; and (2) that the prior squabbles which had taken place between the parents prior to the child's placement in the foster home in September,

1949, made it inadvisable to now change the custody back to the father.

In the recent case of *Dodge v. Dodge* (1955), 268 Wis. 441, 444, 67 N. W. (2d) 878, we had before us an application for change of custody of a minor child of divorced parents and therein stated:

"In custody cases it is impossible to fix rules which are inflexible. Each case must be considered in the light of all of the facts and circumstances that appear in the record. One rule is that the welfare of the child is the paramount and controlling consideration in determining the question of custody of a minor child. . . . The trial court in these cases is in a favorable position to exercise discretion and sound judgment. The trial court in this case presided at all of the proceedings between the parties involving the divorce and the various applications for amendment thereof. He was acquainted with the parties and he saw and heard the witnesses who were produced at the last hearing.

"In reviewing custody cases this court relies heavily upon the determination by the trial court. Except in the very few cases where there is a clear abuse of discretion, the court's order should prevail. This is a close case, but we find no abuse of discretion and therefore adhere to the order made."

We consider the instant case also to be a close one, but it is our conclusion that in contrast to the situation in the *Dodge Case* there has been an abuse of discretion here.

We cannot agree, that because the father forcibly attempted to retain the child's custody by use of a gun back in 1948, for which act he has paid his debt to society by serving fourteen months in the reformatory, such act forever after brands him as unfit to have custody of his child. We recently held in *In re Aronson* (1955), 269 Wis. 460, 69 N. W. (2d) 470, that acts of adultery committed seven years prior to trial were too remote to be considered on the issue of whether a child residing in the same home with such person was to be adjudged a "neglected child." We deem

the same principle applicable to this shooting incident on the part of the father in the instant case.

We also cannot agree with the trial court's conclusion that the effect on this eleven-year-old boy of changing his custody from that of the Fouser home to that of his father is likely to be detrimental on the ground of making him feel insecure, because of the prior altercations of his parents over custody. For the past five years the mother has shown practically no interest in the boy and it is highly unlikely that there will be any further attempts on her part to effect a change of custody.

In considering that which is for the best interests of this eleven-year-old boy we deem a father's affection and guidance through his teen-age years to be highly desirable, and that the advantages of the same far outweigh any feeling of temporary insecurity that might be produced in the boy as a result of his moving from the foster home to that of his father. Kind treatment by strangers is not a full substitute for parental love and affection. Furthermore, the two little daughters of Mr. Edwards by his second marriage are Franklin, Jr.'s, half sisters, and the closer contacts to be gained by residing in the same home with them may well develop ties that will be of enduring gratification to him throughout his life. This boy is entitled to have the benefits which accrue from the close association with the members of one's own family.

The conclusion reached by us herein should not be interpreted as laying down an inflexible rule, that, in every case where custody of a child of divorced parents has been transferred to a third person as the result of a court's determination that both parents were unfit to have such custody, and thereafter one of the parents has reformed, custody should then be transferred to such parent. There well may be cases where it would be detrimental to the best interests of the child to order a transfer of custody to the reformed parent, but we do not consider this to be such a case.

Because of our determination that there has been an abuse of discretion in denying the father's application, it will be necessary that the order appealed from be reversed and the cause remanded so that an order may be entered awarding custody of the boy to his father. The present school year is drawing to a close and it would be inadvisable that Franklin, Jr., be removed from the Fouser foster home to that of his father until after the conclusion of the present school year. Therefore, the order for change of custody to be entered pursuant to our mandate should make proper provision for this.

*By the Court.*—Order reversed, and cause remanded with directions to enter an order for change of custody in conformity with this opinion.

BROADFOOT, J., dissents.

The following opinion was filed June 28, 1955:

PER CURIAM (*on motion for rehearing*). The brief submitted in behalf of respondent, Mrs. Veda Stone, in support of the motion for rehearing, points out that the testimony of Franklin Edwards, Jr., was not taken at the hearing held upon the petition of his father in which the custody of said minor was at issue. Such brief further states that the boy is "sick at heart" over the decision made by this court directing that his custody be awarded to the father.

Inasmuch as the welfare of this boy is the paramount factor to be considered in any contest over his custody, we have concluded that in the interest of justice we should exercise our discretionary power under sec. 251.09, Stats., and remand the case for further proceedings so that the testimony of Franklin Edwards, Jr., may be taken, and a new determination made by the trial court after the taking of such additional testimony.

Franklin Edwards, Jr., became twelve years of age on June 16, 1955.. In the case of *Jones v. State ex rel. Falligant* (1933), 211 Wis. 9, 16, 247 N. W. 445, this court based its decision as to who should have the custody of a fourteen-year-old girl largely upon the testimony of such child. In the instant case, if Franklin Edwards, Jr., does testify that he prefers to remain in the foster home where he has resided for some years rather than return to the custody of his father, such fact should not be deemed to be controlling on the issue of custody unless the testimony of the boy goes beyond this matter of personal preference and gives substantial reasons why it would be against his best interests to be compelled to reside with his father.

We recommend to the trial court that a competent and disinterested attorney be appointed guardian *ad litem* for Franklin Edwards, Jr., and that such guardian *ad litem* be allowed adequate opportunity to confer with the boy well in advance of the hearing at which his testimony is to be taken, and so that such guardian *ad litem* may make such further investigation as he deems advisable after such conference. If the guardian *ad litem* should request the taking of the testimony of witnesses other than Franklin Edwards, Jr., the guardian *ad litem* should be granted such privilege of calling additional witnesses.

The previous mandate of this court is vacated and the order appealed from is reversed and cause remanded for further proceedings in accordance with this opinion.

GEHL, J. (*dissenting*). I do not agree that we should remand the cause solely upon the ground that the boy whose custody is involved is "sick at heart," and certainly I do not agree that it should be remanded for a reason which does not appear of record. The majority state very frankly that the

circumstance which prompts their conclusion is brought to their attention by respondent's brief rather than by anything appearing of record.

I am authorized to state that Mr. Justice STEINLE concurs in this dissent.