opinion of the court
Thomas F. McGowan, J.
On April 2, 1982, Sharon Riley, the mother and natural guardian of Barth Riley, an infant, acting without counsel, petitioned for approval of settlement of a claim against the Erie Lackawanna Railroad (Erie). On that date, this court appointed John R. Streb guardian ad litem to review and report concerning the proposed settlement. An order reflecting this appointment was granted on May 7, 1982.
On January 3, 1983, Mr. Streb presented his report recommending that the settlement not be approved. Prior to that time, on or about October 23, 1982, Mr. Streb, acting in his capacity of guardian ad litem for Barth Riley, had served a verified complaint. On February 8,1983, this court accepted the report and recommendation of the guardian ad litem, discharged him, and denied the application for the infant settlement based on that report. Mr. *620 Darragh, counsel for Erie, now questions the propriety of Mr. Streb’s continued representation of plaintiff, and he has asked that Mr. Streb, and the Paul Beltz law firm with which he is associated, be disqualified. The court has agreed to consider this question.
Erie argues that Canons 5 and 9 of the Code of Professional Responsibility preclude a guardian ad litem — appointed to report to the court regarding the merits of a proposed infant settlement — from acting as the attorney to prosecute the claim out of which the settlement offer arose. Counsel contends that the guardian ad litem is an agent of the court and may therefore do nothing that the court itself could not do. Erie also argues that the guardian ad litem has a duty to be objective and fairminded in carrying out his office and that such a role is or can be inconsistent with the role of advocate. In this regard, defendant points out that Mr. Streb actively commenced to pursue the case on behalf of Mrs. Riley and her son even before he had submitted his report and been discharged. Defendant contends that such conduct, of necessity, compromises the objectivity demanded of the guardian ad litem.
Addressing the latter argument first, it cannot be gainsaid that the report of this guardian ad litem could have been more objective. Nevertheless, his investigation of the facts and law has been more than adequate. This infant, only eight years old at the time of the accident, suffered the loss of his left leg below the knee. Clearly the settlement offer of $11,720, with $2,000 of that to be used to satisfy a New York State Department of Social Services lien, is adequate only if either the defendant’s liability is virtually nonexistent (contributory negligence being applicable to this case) or its ability to respond in damages is questionable. Defendant does not seriously dispute the guardian ad litem’s analysis of the facts and the law relative to the liability issues. Erie argues, however, that the guardian ad litem has not addressed the fact of its bankruptcy. At the same time, Erie fails to present information to show that any judgment which plaintiff might secure cannot be collected either in whole or in part.
*621 The prime allegiance of the guardian ad litem is to the infant, but he has a concurrent obligation, as an officer of the court, to make a thorough, fair and objective report of the information he obtains through his investigations (Matter of Ford, 79 AD2d 403; 25 Carmody-Wait 2d, NY Prac, p 241). By the same token, the guardian ad litem need not necessarily maintain the same degree of objectivity as might be required of the court appointing him.* In this case, whatever may be the deficiencies of the guardian ad litem’s report, it has served the purpose of informing the court of the salient facts and law involved, and the court has accepted the report.
A more telling point is defendant’s argument that to allow the guardian ad litem to act as attorney for plaintiff would create the appearance of impropriety. It is argued that the guardian ad litem has a quasi-judicial or public function and that by agreeing to act as attorney in a matter in which he had responsibilities as guardian, he is violating Canons 5 and 9 of the Code of Professional Responsibility.
The guardian ad litem does indeed have a public function, but it differs only in degree from the general obligations required of all attorneys as officers of the court (see 6 NY Jur 2d, Attorneys at Law, § 2, pp 421-422). That function differs even less from that of a receiver in a mortgage foreclosure, a trustee in bankruptcy, an executor, administrator, or other similar fiduciary. As to these, for example, it has been stated that there is no ethical impropriety for such a fiduciary to retain, as counsel, the law firm of which he is a member (49 NY St Bar J 447, Opn No. 471). In any event, the intent and meaning of the aforementioned canons, and particularly EC 9-3 and DR 9-101 (B), pertaining to public employees and judicial officers, is unduly distorted if applied to the function of the guardian ad litem.
There is, of course, the danger that the guardian ad litem may be influenced in making his recommendation by the *622 prospect of future employment and that it may appear that he “may have in mind feathering his own nest” (51 NY St Bar J 672, Opn No. 514). These considerations — found applicable in the above opinion to the acceptance by the guardian ad litem, a few days after the conclusion of a conservatorship proceeding, of an appointment as attorney for the conservator — do not necessarily apply here. The conservatorship proceeding often has the earmarks of an adversary proceeding. The possible result is that the conservator, who may have been recommended by the guardian ad litem, gains control of the property of the conservatee. The proposed conservatee may have no one to represent him at the proceeding except the guardian ad litem. The danger that the guardian ad litem may color his recommendation to the court, to the detriment of the conservatee and with an eye toward employment by the eventual conservator, must therefore be eliminated.
In the situation at bar, the guardian of the infant, Mrs. Riley, has the authority to employ counsel of her choice. However, unlike the conservatorship situation, her “office” existed prior to the appointment of the guardian ad litem, and her status as guardian is in no way dependent on the guardian ad litem’s recommendation to the court. Further, her role holds no possibility of financial remuneration. The conservator, by contrast, can earn substantial fees from his duties. In addition, the attorney for the conservator is assured of lucrative employment as long as the conservatee has assets from which to pay him. Whichever lawyer Mrs. Riley employs will profit only to the extent that the plaintiff recovers; by recommending against a settlement, the guardian ad litem may be gaining a client but not necessarily a fee. Moreover, the power of the court to fix compensation pursuant to section 474 of the Judiciary Law assures that the attorney for the guardian of the infant will receive only that amount proportionate to the amount recovered through his efforts.
In essence, Mrs. Riley’s only interest, as guardian, is the natural concern of a mother for the welfare of her son. The decision as to whether to settle the claim or to employ counsel to press it further is hers to make. The danger that an articulate attorney may persuade her to reject a reasonable offer in favor of litigating a tenuous claim is obviated *623 by the court’s power to order her to accept the settlement (see McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C1207:2, p 324).
Because of the above considerations, there is simply not the risk, present in the conservatorship example, that the guardian ad litem will forsake his duties at the expense of an unprotected ward. However, assuming, arguendo, that Mr. Streb acted improperly in agreeing to act as attorney before his report and discharge as guardian ad litem, the decision as to whether to disqualify him and his firm is not automatic and involves a balancing of factors. A decision to disqualify plaintiff’s counsel in this case would have the immediate adverse impact of separating Mrs. Riley from counsel of her choice (see Armstrong v McAlpin, 625 F2d 433; Board of Educ. v Nyquist, 590 F2d 1241). Here the court’s concern is not so much with disrupting the litigation — it having not progressed very far in any event — but rather with plaintiff’s past inability to secure counsel to vigorously press her claim.
Mrs. Riley and her family are living on various welfare and entitlement programs. She does not have the same ability or resources to procure legal advice that a person in more fortunate circumstances might possess. Nevertheless she has been in contact with three attorneys. The first did little to press her claim before he died in a car accident. The second, an attorney in Pennsylvania, advised her to consult a New York attorney. The third was not retained by Mrs. Riley but simply acted as an intermediary for settlement purposes between her and the attorneys for Erie. Apparently, Mr. Streb was the first attorney to demonstrate an active interest in her case. It would be unfortunate if she were now required to sever her satisfactory relationship with Mr. Streb and to resume her search for an attorney.
Of course, this court could order Mr. Streb to put Mrs. Riley in contact with other counsel. This, however, would require her to consult with yet another attorney for reasons which have little or nothing to do with her or the pursuit of her claim. Above all, we in the judicial system must be concerned with fairness and justice. A pedantic interpretation and application of rules which, though im *624 portant, have little or no practical effect on those laymen seeking redress through the judicial system, does little to promote the ends of justice or the public’s perception of the viability of that system.
Perhaps for this reason, disqualification is not necessarily the only or the most appropriate remedy. As stated in Armstrong v McAlpin (supra, p 444), quoting Board of Educ. v Nyquist (supra, p 1246): “ Tn other words, with rare exceptions disqualification has been ordered only in essentially two kinds of cases: (1) where an attorney’s conflict of interests in violation of Canons 5 and 9 of the Code of Professional Responsibility undermines the court’s confidence in the vigor of the attorney’s representation of his client * * * or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, for example, in violation of Canons 4 and 9, thus giving his present client an unfair advantage’ ”. “[W]hen there is no claim that the trial will be tainted, appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest of cases.” (Board of Educ. v Nyquist, supra, p 1247; see, also, Armstrong v McAlpin, supra, p 445.) In this case, where there is no conflict of interest and no claim of taint in the litigation process, and where the plaintiff has been unable heretofore to secure vigorous representation, the remedy for any claim of an appearance of impropriety should be addressed to the appropriate disciplinary committee and not to the court’s power of disqualification (see Armstrong v McAlpin, supra; Board of Educ. v Nyquist, supra).
Accordingly, defendant’s motion to disqualify counsel for plaintiff is denied. The court will, however, order counsel for plaintiff to amend the complaint to delete the guardian ad litem as a party to the action.

 In Matter of Ford (79 AD2d 403, 408), the court indicated that the attorney representing the mother of an infant in her capacity as guardian of the property of the infant and who had already filed objections to probate of a will on behalf of the mother, was not disqualified for that reason from being appointed guardian ad litem “if the Surrogate finds a sound reason in the context of this case for appointing him.”