**Susan Marie MOORE,
Appellant (Defendant),**

v.

**Jerry Wayne MOORE,
Appellee (Plaintiff).**

No. 89–261.

Supreme Court of Wyoming.

April 12, 1991.

Michael K. Shoumaker, Sheridan, for appellant.

Wayne R. Wilson, Daly, Anderson & Taylor, Gillette, for appellee.

Michael Patchen, Morgan, Price & Arp, Gillette, Guardian Ad Litem.

* Chief Justice at time of oral argument.

Before CARDINE, C.J.,* and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

THOMAS, Justice.

The main question to be addressed in this case is whether an adjudication of child custody in a divorce action must be reversed because of an *ex parte* conference between the trial judge and the guardian *ad litem* appointed to represent the minor child of the parties. Other questions are posed relating to claims of abuse of discretion by the trial court in adjudicating custody and in dividing the marital property. While recognizing the impropriety of the *ex parte* discussion between the guardian *ad litem* and the trial judge, we conclude that no prejudicial error is manifested in this instance and that the appellant, if offended by that occurrence, ignored the opportunity to address the question on the record in the trial court. The adjudication of custody and the division of the marital property both occurred within the recognized realm of discretion afforded to the trial court, and the Decree of Divorce entered in the trial court is affirmed.

Susan Marie Moore, the appellant, states the issues in this appeal as:

"I. Did the trial court abuse its discretion by allowing *ex-parte* communication with the guardian *ad litem*?

"II. Did the court abuse its discretion concerning the evidence for the determination of custody of the minor child?

"A. The Wife's Relationship with Jetty Lee Harvey Should Not Have an Effect on a Custody Determination

"B. The Evidence Clearly Established that Sue Moore Had Primarily Cared for the Child

"III. Did the court divide the marital property equitably?"

Jerry Wayne Moore, the appellee, encompasses a more elaborate statement of the issues in his Brief of Appellee, which is:

"I. Is the issue of whether or not the communication between the trial court judge and the guardian *ad litem* was proper preserved for appeal since appel-

lant did not object to this communication at the time of trial?

"II. Was the communication between the trial court judge and the guardian *ad litem* regarding whether or not the guardian would make a recommendation on child custody an improper *ex parte* communication because counsel for the other parties were not present?

"III. If the communication between the trial court judge and the guardian *ad litem* was improper, was this error prejudicial to the appellant?

"IV. Did the trial court improperly order the payment of the guardian *ad litem* fees?

"V. Did the trial court judge exceed the bounds of reason under the circumstances of the case so as to constitute a clear abuse of discretion?

"A. Was the consideration of the appellant's relationship with Jetty Lee Harvey improper in making a child custody determination?

"B. What did the evidence establish regarding which parent had primarily cared for the child?

"VI. Is there evidence that the marital property was not divided equitably?"

We were favored by a Brief of Guardian *Ad Litem* in which the issues are stated to be:

"1. Did failure of appellant to object to *ex parte* communication and payment of guardian *ad litem*'s fees preserve these issues for appeal?

"2. If appellant did preserve the *ex parte* issue for appeal, was the appellant prejudiced and injured and would there be a reasonable possibility the verdict would have been more favorable to her if such error had not occurred?

"3. Does the trial court, as finder of fact, have the discretion to award custody to one parent, if part of the evidence, a psychological report, suggests custody should be placed with the other parent?

"4. Who should pay the fees and costs incurred by the guardian *ad litem* because of this appeal?"

The appellant and appellee were married on February 2, 1979 and have a female child who was born on December 30, 1980. Jerry Wayne Moore, the appellee, instituted this divorce action on May 26, 1989. After an Answer and Counterclaim by the wife, various proceedings occurred in the case including an application by the appellee for the appointment of a guardian *ad litem*. The appellant agreed to the appointment of the guardian *ad litem*, but opposed the appointment of the individual selected by the appellee. Nevertheless, the trial court appointed that individual. After trial, the court entered a Decree of Divorce on October 12, 1989.

In the course of remarks from the bench, the trial judge stated:

"THE COURT: * * * That leaves us then with the question of custody. And it is an extremely difficult question.

"I have weighed, as I am sure, many of the same things that Mr. Patchen has.

"Just so it's clear for the parties, I spoke with him for a few minutes before we came back in while you were preparing your closings. He told me at that time that he was not going to make a recommendation. I assured him at that time that I would not be upset at him if he did not, believing that the ultimate responsibility always lies with the court, even as distasteful as that might sometimes be.

"The court in this matter has measured or has looked at a number of things, and I want to apprise the parties of them."

The court then went on to relate the various factors that had been incorporated in its decision with respect to custody. No one made any complaint about the conference between the guardian *ad litem* and the trial judge that was disclosed in the course of the judge's remarks. Consequently, the only record of that event is found in the remarks of the trial judge quoted above.

■ We begin with the question arising out of the *ex parte* communication. We are satisfied that such an occurrence cannot be ethically justified. In the Code of Judicial Conduct, adopted by order of this court in 1973, the pertinent statement is:

"(4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding." Canon 3A.(4), Code of Judicial Conduct.

In the Rules of Professional Conduct for Attorneys at Law, adopted by this court in 1986, the following pertinent language appears:

"A lawyer shall not:

  *   *   *   *   *   *

"(b) communicate *ex parte* with an official acting in an adjudicative capacity concerning any substantive or procedural issue before him, or which is likely to be before him, unless:

"(1) opposing counsel has consented, or

"(2) such communication is otherwise permitted by law; * * *." Rule 3.5, Rules of Professional Conduct for Attorneys at Law.

■ We are satisfied that those rules were applicable in this instance. A guardian *ad litem* is the attorney for the minor whom he is appointed to serve. *Veazey v. Veazey*, 560 P.2d 382 (Alaska 1977). He participates in the proceedings as an advocate. *Veazey. See Riley v. Erie Lackawanna R. Company*, 119 Misc.2d 619, 463 N.Y.S.2d 986 (1983); *De Los Santos v. Superior Court of Los Angeles County*, 27 Cal.3d 677, 166 Cal.Rptr. 172, 613 P.2d 233 (1980). In Wyoming, that rule is consistent with policy articulated by the legislature in two specific statutes requiring, or permitting, the appointment of a guardian *ad litem* since, in each statute, the guardian is charged with representing the child. Sections 14–2–312 and 14–3–211(a), W.S.1977 (July 1986 Repl.). In accordance with the foregoing authority, we perceive it to be unequivocal that the guardian *ad litem* has the same ethical responsibilities in the proceeding as any other attorney. The specific subject matter of this case is succinctly summarized in this way:

"* * * Guardians *ad litem* may not have *ex parte* communications with the judge." Podell, *The Role of the Guardian Ad Litem*, 25 Trial 31, 34 (April 1989).

■ Identification of the ethical impropriety surrounding the *ex parte* communication does not serve, however, to resolve the issue. The judgment in this instance was a decree of divorce entered in favor of a party who was not responsible for, and did not participate in, the ethical impropriety. We are convinced that to justify the reversal of a judgment under these circumstances demands more than simply the occurrence of the *ex parte* communication. The rule we espouse is that, to lead to a reversal of a judgment in such an instance, a manifest injustice must appear. In order to evaluate the presence of a manifest injustice, we look to the totality of the circumstances. In this instance, the trial court considered the stability of the minor child; the primary care provider in terms of history; the gender issue; an illicit sexual relationship of the appellant; and alluded to substance abuse problems by the appellee. It determined that both parties are proper parties to have custody of the child and that both are fit and proper parents. Nothing in the record indicates that the trial judge relied upon any private information obtained from the guardian *ad litem* and, apparently, there was evidence or argument presented to the court with respect to the several factors that were considered in adjudicating custody. We discern no manifest injustice arising out of the *ex parte* contact.

■ Furthermore, a claim of error relating to *ex parte* contact is susceptible to waiver, as is true of most claims of error. The trial judge certainly made known to the parties the fact of the *ex parte* contact. The appellant did not object at that time. The appellant did not seek to explore the tenor of the *ex parte* contact. Instead, the parties accepted what the court said as being a full disclosure of the event. It was only after the articulation of an adverse ruling that the appellant became concerned about the matter of *ex parte* contact. That matter should have been raised and explored at the trial.

We turn then to the question of whether there was an abuse of discretion in awarding custody to the appellee, the father. Our rule is that this court does:

" * * * [N]ot interfere with the decision of the district court in child-custody questions unless there is a procedural error, or unless there is shown to be a clear abuse of discretion, and, further, that a court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances as is said to mean an error of law committed by the court under the circumstances. *Ayling v. Ayling,* supra [661 P.2d 1054 (Wyo.1983)]; *Bereman v. Bereman,* Wyo., 645 P.2d 1155 (1982); *Martinez v. State,* Wyo., 611 P.2d 831 (1980)." *Fanning v. Fanning,* 717 P.2d 346, 349 (Wyo.1986).

*Uhls v. Uhls,* 794 P.2d 894 (Wyo.1990); *Goss v. Goss,* 780 P.2d 306 (Wyo.1989); *Deen v. Deen,* 774 P.2d 621 (Wyo.1989). Our analysis of the rationale articulated by the district judge in making his custodial determination satisfies us that there is no showing of a clear abuse of discretion and, other than the ethical problem previously discussed, there was no procedural error. We affirm the Decree of Divorce insofar as it awards custody to the appellee.

■ The complaint about division of marital property was not emphasized by the appellant in her brief. We know that no hard and fast rules govern property division. *Dennis v. Dennis,* 675 P.2d 265 (Wyo.1984); *Klatt v. Klatt,* 654 P.2d 733 (Wyo.1982); *Paul v. Paul,* 616 P.2d 707 (Wyo.1980). This aspect of the dissolution of a marriage is also vested in the discretion of the trial court and, to be just and equitable, the division need not be equal. *Blanchard v. Blanchard,* 770 P.2d 227 (Wyo.1989); *Dennis.* Our examination of the record and the property division that was made by the court satisfies us that there was no abuse of discretion by the court in making the property division. Initially, we note that a substantial part of the property division was agreed upon by the parties. With respect to the balance, the court endeavored to effect an equitable division, and we find no fault with that. The aspect of the divorce decree relating to the property division is affirmed.

■ In the Brief of Guardian *Ad Litem,* the matter of fees with respect to this appeal is raised. We have no difficulty in sustaining the order of the trial court that provided for the payment of the fees of the guardian *ad litem* out of the Apollo and Moore Mineral Trust moneys. The guardian *ad litem* complains that those moneys were actually divided and that appellant did not pay her share. We find no justification for the appellate court to pursue that particular problem, and we content ourselves with a simple ruling that the charges for pursuit of the appeal by the guardian *ad litem* should be managed in exactly the same way that the fees in the trial court were.

In summary, we conclude that no reversible error is to be found in the improper *ex parte* contact between the guardian *ad litem* and the trial judge. There was no abuse of discretion in the award of custody or in the property division. The Decree of Divorce is affirmed.

URBIGKIT, C.J., filed a dissenting opinion.

MACY, J., filed a dissenting opinion.

URBIGKIT, Chief Justice, dissenting.

I am more than offended by the ex parte discussions between the trial court and the guardian ad litem. I first consider the majority's evaluation of the circumstances of the exposure of the ex parte discussions confined in its review. The majority is misguided in doing nothing except discussing ethics.

Enforced or non-enforced ethical misconduct of both judge and attorney does not protect the litigant in whose interest ethical standards were adopted and are to be enforced by the state bar, trial courts and this tribunal.[1]

---

1. I will not accept for a proper Wyoming standard a statement made in a 1990 State Justice

Institute pamphlet of court studies which in-

Our legal system is based on the principle that an independent, fair, and competent judiciary will interpret and apply the laws that govern us. The role of the judiciary is central to American concepts of justice and the rule of law. Intrinsic to all sections of this Code are the precepts that judges, individually and collectively, must respect and honor the judicial office as a public trust and strive to enhance and maintain confidence in our legal system. The judge is an arbiter of facts and law for the resolution of disputes and a highly visible symbol of government under the rule of law.

Wyoming Code of Judicial Conduct, Preamble (December 1990).

Appellant, Susan Marie Moore, and appellee, Jerry Wayne Moore, were married in 1979 * in Douglas, Wyoming and were favored with a daughter, Tiffany Sue Moore, born December 30, 1980. Care and custody of the daughter became the predominating issue in this case. Ultimately, her custody was granted to appellee in the 1989 divorce decree. Trial complexities were engendered by the appointment of a guardian ad litem whose designation was opposed by appellant, and especially so on appeal after learning the guardian ad litem had discussed the case ex parte with the trial court judge shortly after the trial court had heard final argument and during its announcement of the decision which almost completely favored appellee.[2]

It must be recognized that the trial court notice given about the ex parte contact came in its course of orally stating the final decision, but before it announced the most significant portion of the decision, which was the custody of the litigants' young daughter.

In this case, a dispute developed about appellee's alcohol problem and the improvidence of appellant in having sexual relations with a man after normal relations between the marital parties had ended. Adding difficulty to the present decision is reference in the record that the trial court had ex parte discussions with the guardian ad litem. The scope of those discussions was undisclosed and is undeterminable by this record except that the guardian ad litem who had not testified or filed a report, whenever the ex parte discussions may have occurred, did tell the trial court about his decision not to make a custody recommendation.

This case presents the unpleasant and difficult inquiry of the relationship of a guardian ad litem to the litigative process whether counsel, witness or confidant of the court. Accordingly, the nature of the responsibility is put in issue and the effect of ex parte communications, which are undisclosed, is presented.

The issue is more specifically defined in appellee's brief on the basis that appellant cannot establish what the subject of the communication was and, lacking that knowledge, cannot prove prejudice. Appellee and the guardian ad litem further contend that immediate objection should have been taken when, in rendering its final decision, the trial court announced that the ex parte contact had occurred.

The trial court stated:

cluded several Wyoming courts as directed to one of those studied:

> The judge relies heavily on the bar to resolve most issues in criminal and civil cases before appearing in court. Attorneys are welcome to have *ex parte* conversations in chambers to see if proposal agreements or settlements are acceptable to the judge. These conversations appear to be accepted practice. As one attorney explained, "We trust each other. One time I go see the judge, the next time the other guy does. We have to."

K. Fahnestock & M. Geiger, *Time to Justice,* 79 (March 1990).

Also clearly unacceptable is a comment about the same court that was found in a footnote in a circulated opinion before being edited out in the published version, which referred to the custom or common practice of ex parte contact with judges in Wyoming where, incidentally, in review of the facts of the case, the Wyoming death penalty was reversed for retrial. *Osborn v. Shillinger,* 861 F.2d 612 (10th Cir.1988).

* The appellate briefs reflected an erroneous date of 1990.

2. *See* Genden, *Separate Legal Representation for Children: Protecting the Rights and Interests of Minors in Judicial Proceedings,* 11 Harv. C.R.–C. L.L.Rev. 565 (1976); Hansen, *Guardians Ad Litem in Divorce and Custody Cases: Protection of the Child's Interests,* 4 J.Fam.L. 181 (1964) and Note, *A Child's Due Process Right to Counsel in Divorce Custody Proceedings,* 27 Hastings L.J. 917 (1976).

That leaves us then with the question of custody. And it is an extremely difficult question.

I have weighed, as I am sure, many of the same things that [guardian ad litem] has.

Just so it's clear for the parties, I spoke with [the guardian ad litem] for a few minutes before we came back in while you were preparing your closings. He told me at that time that he was not going to make a recommendation. I assured him at that time that I would not be upset at him if he did not, believing that the ultimate responsibility always lies with the court, even as distasteful as that might sometimes be.

The posture of the guardian ad litem in appellate brief is informative:

## A. Lack of record about communication

*Appellant makes the argument that since the court agreed with the guardian ad litem concerning several issues including where appellant would be living once the divorce was final and her relationship with Mr. Jetty Harvey that these issues must have been discussed during this ex parte communication. The record does not reflect when or how the guardian ad litem expressed his concern where the appellant would be living or her relationship with Mr. Harvey.* The closing arguments were never recorded and it is just as logical, if not more so, to assume these issues were discussed during the closing arguments of the guardian ad litem rather than with the judge in the ex parte communication. The record does suggest these issues were not discussed during the ex parte communication because the court did not tell the parties that issues other than the GAL's [guardian ad litem's] recommendation were discussed.

Because the record does not reflect that the two issues raised by the appellant were discussed in the ex parte communication, this court cannot, as the appellant's attorney has done, make a Quantum leap from the court's statement that his conversation with the guardian ad litem concerned the guardian's recommendation about custody to concluding that the issues relating to Mr. Harvey and where appellant would live were also * * * discussed during the ex parte communication.

## B. No objection made by appellant

The court informed the parties that it had communication with the guardian ad litem prior to the court rendering its decision concerning custody of minor child. * * * Neither party objected to the ex parte communication and, as a result, neither party preserved this issue for appeal. This court will not consider questions on appeal that were not properly raised in the trial court. *ABC Builders, Inc. v. Phillips*, 632 P.2d 925 (Wyo.1981).

Had the appellant timely objected immediately after the court informed the parties of the ex parte conversation, the appellant could have done several things to challenge the communication including putting on testimony as to the extent of the conversation and whether the appellant was prejudiced by the ex parte communication. However, appellant failed to object to the ex parte communication and therefore has failed to preserve this issue on appeal.

Failure to object also goes to the matter involving the guardian ad litem's fees which were to be paid from the monies in the Apollo and Moore Mineral Trust. * * * The guardian ad litem's fees were to be paid out of the trust fund and then what was left in the trust fund would be equally divided between the parties. Appellant did not object to how the guardian ad litem's fees were to be paid. The appellant did not object to the amount of the fees. The appellant did not object that the amount had not been shown to be reasonable nor did appellant object that no amount had been submitted at that time. Again, failure to raise this issue at the trial court level is failure to preserve this issue for appeal.

(Emphasis added.)

The difficulty presented is further addressed in later comment in brief by the guardian ad litem:

If the court's ex parte communication with the GAL [guardian ad litem] is error it is harmless error. The appellant cannot show that any issue, other than whether a recommendation would be made, was discussed during the conversation. Appellant does not show that this discussion about whether a recommendation regarding custody would be made is prejudicial or injurious to her thus no reversal of the District Court's ruling is warranted. *Spilman v. State,* 633 P.2d 183 (Wyo.1981). Even if the issues about where the appellant would live and her relationship with Mr. Harvey were discussed ex parte, this discussion only restated evidence brought out during the trial proper and so any error was harmless. *CP v. Laramie County Dept. of Public Assistance and Social Services,* 648 P.2d 512 (Wyo.1982).[3]

The real difficulty is that the writer of the quoted brief was a participant in the undisclosed discussions and refuge is now taken by him in the lack of disclosure to say that error cannot be demonstrated. The guardian ad litem serves as the child's attorney, not as an expert witness. He is contributing counsel with advocacy responsibility. *Veazey v. Veazey,* 560 P.2d 382 (Alaska 1977). First notice of the guardian ad litem's discussions with the trial court were provided in the trial court's oral statement of its final decision. Except by interruption of the trial court during its announcement of the decision, no opportunity during the entire trial process was available to the disadvantaged litigant. Specifically, the responsibility to define what had occurred rested equally and very directly with both the trial court and the guardian ad litem. I am completely sympathetic with counsel for appellant that the only effective resource remaining was to test by appeal this obvious impropriety then announced as predating the determined decision.

I would determine the case on the basis that the *participants* to the ex parte discussion did not provide, by whatever method available, a record of what was considered in the ex parte conference or conferences and, as a consequence, presumptive error exists. The vice of the responsive argument is that the trial court's decision had been made before information was furnished to the unadvised litigant that the ex parte session had occurred. The requirement to sustain events that occurred by inclusion in the record rested upon the participants, not upon the uninvited attorney when the guardian ad litem did not testify or provide information so that it would be available for review in the record. The guardian ad litem is a participating advocate. *De Los Santos v. Superior Court of Los Angeles County,* 27 Cal.3d 677, 166 Cal.Rptr. 172, 613 P.2d 233 (1980); *Riley v. Erie Lackawanna R. Co.,* 119 Misc.2d 619, 463 N.Y.S.2d 986 (1983). *See likewise In re Marriage of Hammill,* 225 Mont. 263, 732 P.2d 403 (1987); *Wendland v. Wendland,* 29 Wis.2d 145, 138 N.W.2d 185 (1965); and *Edwards v. Edwards,* 270 Wis. 48, 71 N.W.2d 366 (1955).

The guardian ad litem is no more entitled to testify in the guise of final argument than he can acceptably provide testimony by ex parte contact during the proceeding. The subject of the guardian ad litem was thoughtfully examined by Richard J. Podell, Chairman of the American Bar Association Family Law Section and editor of the Wisconsin Journal of Family Law, in a recent article which included the admonition:

Before trial, guardians ad litem have a duty to investigate, marshal evidence, subpoena witnesses, file motions when necessary, and prepare witnesses to testify at trial.

Guardians ad litem must be aware of certain evidentiary problems, such as relevancy and hearsay. At trial, the rules of evidence apply, but state laws vary. The guardians are usually afforded the

---

3. This is not unlike communications with a represented party within the applicable disciplinary rules for lawyers. See and compare Rules 3.5 and 4.2 of the Wyoming Rules for Professional Conduct for Attorneys at Law with Canon 3(A)(4) of the Code of Judicial Conduct. *See also* Annotation, *Communication With Party Represented by Counsel as Ground for Disciplining Attorney,* 26 A.L.R.4th 102 (1983).

same rights as the parties' attorneys (e.g., of making opening statements and closing arguments). Guardians cannot be called as witnesses. *Guardians ad litem may not have ex parte communications with the judge.*

Podell, *The Role of the Guardian Ad Litem*, 25 Trial 31, 34 (April 1989) (emphasis added).

The scope of responsibility for the guardian ad litem and avenues of evidentiary presentation are firmly centered in precedent. *In re Marriage of Joens*, 284 N.W.2d 326, 329 (Iowa 1979) states:

> The attorney appointed [to be a guardian ad litem], then, like the attorney for any client, is to see that the interests of those he represents get a full and fair airing at the trial by the presentation of competent and relevant evidence. What the attorney discovers is frequently hearsay, sometimes only rank rumor or gossip. Therefore those who know the facts should testify in order to provide a reliable basis for the trail court's ultimate decision.

> This does not conflict with *In re Marriage of Winter*, [223 N.W.2d 165 (Iowa 1974)], where we listed as one of the factors to be used in deciding who should have custody "The report and recommendation of the attorney for the child." 223 N.W.2d at 167. We intended this to mean only that such matters should be considered when properly before the court by agreement or stipulation, as they frequently are and as was the case in the appeal now before us. The statute does not provide—nor did we say in *Winter*—that the trial court accept untested hearsay in lieu of sworn testimony for deciding an issue as important as child custody.

In federal administrative law context, it was explained:

> Nothing may be treated as evidence which has not been introduced as such, inasmuch as a hearing requires that the party be apprised of the evidence against him in order that he may refute, test and explain it.

*La Prade v. Department of Water and Power of City of Los Angeles*, 27 Cal.2d 47, 162 P.2d 13, 16 (1945).

The confrontation in right to cross-examine and respond is deeply steeped both in normalized trial procedure requirements and in basic constitutional due process. In *Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959), Justice Harlan enunciated a standard long established in English–American law that ex parte informational production for determinate adjudication was subject to a due process standard provided by the agency's own rules. The consequent employment termination decision was illegal and had no effect. *Seaton* followed the earlier hysteria-induced case of *Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957), also authored by Justice Harlan. *Vitarelli* was followed by *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), with Justice White delivering the opinion of the court. The intrinsic issue continuing through these cases in due process identification is notification and right to respond and present witnesses to which ex parte communications for decision is inimical.

It should be the lesson of this present case and our decision here that any informational proceeding by ex parte communication with the trial court or deciding authority violates the fundamental right of presentation of witnesses by the litigant for defense (or prosecution). *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The Due Process Clause "recognizes higher values than speed or efficiency." *Fuentes v. Shevin*, 407 U.S. 67, 90 n. 22, 92 S.Ct. 1983, 32 L.Ed.2d 556, *reh'g denied* 409 U.S. 902, 93 S.Ct. 177, 34 L.Ed.2d 165 (1972). *See also Wolff*, 418 U.S. at 583, 94 S.Ct. at 2988, Marshall, J., concurring and dissenting. Emplaced in due process is the opportunity to respond. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), *cert. denied* 488 U.S. 941, 109 S.Ct. 363, 102 L.Ed.2d 353, *cert. denied* 488 U.S. 946, 109 S.Ct. 377, 102 L.Ed.2d 365 (1988).

Once it is determined that the Due Process Clause applies, the question remains of what process is due? *Loudermill*, 105 S.Ct. at 1493; *Morrissey*, 408 U.S. 471, 92 S.Ct. at 2593. It is not to be found in ex parte communications to the decision maker, however arranged, if the process denies opportunity for the opposing litigant to factually contest. *Sullivan v. Department of Navy*, 720 F.2d 1266 (Fed.Cir.1983); *Ryder v. United States*, 218 Ct.Cl. 289, 585 F.2d 482 (1978); *Camero v. United States*, 179 Ct.Cl. 520, 375 F.2d 777 (1967). "If the decisionmaker considers charges or evidence which have come to it *ex parte*, i.e., without notice and an opportunity to respond, due process is violated." *D'Acquisto v. Washington*, 640 F.Supp. 594, 621 (N.D.Ill.1986). *See Davis v. Alabama State University*, 613 F.Supp. 134 (M.D. Ala.1985). *Cf. United States v. Napue*, 834 F.2d 1311 (7th Cir.1987). Conversely, see *Matter of Disciplinary Proceedings Against Aulik*, 146 Wis.2d 57, 429 N.W.2d 759 (1988), which recognizes a concern which is not presented in the facts of this case relating to ethical concepts inevitably presented by ex parte contacts.

To be repetitive, during the announcement of the trial court's decision, counsel for appellant was certainly not in a position to interrupt or irritate the trial court judge or challenge his ethics before the decision was finally presented. I completely reject the responsibility of the non-present litigant to explore what improprieties occurred between the trial court and the guardian ad litem.

I do not argue that some ex parte contact, although always wrong, is inevitably cause for reversal. What should be determined is that if the record does not establish that the error was harmless, the non-attendant litigant is entitled to presume harmful error when the events and circumstances were not factually available to him for record review or response. *Horton v. Driskell*, 13 Wyo. 66, 77 P. 354 (1904); *Sullivan*, 720 F.2d 1266.

This court has now adopted the 1990 American Bar Association's standard for judicial conduct and we each separately and jointly have the responsibility for compliance. *In re Hill*, 152 Vt. 548, 568 A.2d 361 (1989); *State v. American TV and Appliance of Madison, Inc.*, 151 Wis.2d 175, 443 N.W.2d 662 (1989). In the meantime, misapplication or intentional disregard should not leave the litigant without remedy, whether or not we enforce our code of ethics. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988); Note, *Liljeberg v. Health Services Acquisition Corp.: The Supreme Court Encourages Disqualification of Federal Judges Under Section 455(a)*, 1989 Wis.L.Rev. 1033 (1989). This case, like *Brooks v. Zebre*, 792 P.2d 196 (Wyo.1990), Urbigkit, J., dissenting, provides a result-oriented perspective which demeans and diminishes the state's justice delivery system.[4]

---

**4.** The section of the 1990 judicial code regarding ex parte contact provides:

(7) A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that:

(a) Where circumstances require, ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized; provided:

(i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and

(ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.

(b) A judge may obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge if the judge gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond. Wyoming Code of Judicial Conduct, Canon 3(B) (1990). In comment, the code states: "A judge must disclose to all parties all ex parte communications described in Sections 3B(7)(a) and 3B(7)(b) regarding a proceeding pending or impending before the judge." *Id.*

I would reverse and remand for an order to provide a fair trial to appellant before a disinterested and impartial trial judge. *See Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986); *Ward v. Village of Monroeville, Ohio*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); *In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955); *Tumey v. State of Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); *Aiken County v. BSP Div. of Envirotech Corp.*, 866 F.2d 661 (4th Cir. 1989); *Rice v. McKenzie*, 581 F.2d 1114 (4th Cir.1978); *Oglesby v. State*, 299 Ark. 403, 773 S.W.2d 443 (1989); *People v. Ross*, 181 Mich.App. 89, 449 N.W.2d 107 (1989); *West v. State*, 519 So.2d 418 (Miss.1988); *State v. Barker*, 227 Neb. 842, 420 N.W.2d 695 (1988); *In Interest of McFall*, 383 Pa. Super. 356, 556 A.2d 1370 (1989); and *Livingston v. State*, 782 S.W.2d 12 (Tex.App. 1989). *Cf. Parliament Ins. Co. v. Hanson*, 676 F.2d 1069, *reh'g denied* 688 F.2d 839 (5th Cir.1982) and *In re Marriage of Goellner*, 770 P.2d 1387 (Colo.App.1989). *See also Ryan v. Commission on Judicial Performance*, 45 Cal.3d 518, 247 Cal.Rptr. 378, 754 P.2d 724 (1988); *Matter of Levine*, 74 N.Y.2d 294, 546 N.Y.S.2d 817, 545 N.E.2d 1205 (1989); Kaufman, *Judicial Ethics: The Less–Often Asked Questions*, 64 Wash.L.Rev. 851 (1989); and Recent Decision, *Professional Responsibility. Judicial Disqualification for Appearance of Bias—Jenkins v. Sterlacci*, 849 F.2d 627 (D.C.Cir.1988), 62 Temp.L.Rev. 1075 (1989).

MACY, Justice, dissenting.

I dissent. The majority opinion in effect states that the only practical purpose of prohibiting *ex parte* communications is to prevent a "manifest injustice." I strongly disagree with such a standard as well as with the concept that this Court, in the name of "waiver," should condone such violation of the Code of Judicial Conduct and the Rules of Professional Conduct for Attorneys at Law as being merely ignorable procedural error. Although the result may not change, the appropriate and just remedy is to remand this case for a new trial to ensure that Appellant, as well as her child, is guaranteed the right to due process. Judicial economy should not be the underlying guideline.